23 F.3d 388
 Jerry L. WEDDEL, and wife, Lea Ann Weddel, on behalf of
their minor daughter, Cassie Ann Weddel,
Petitioners-Appellants,
v.
SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Respondent-Appellee.
 No. 94-5001.
 United States Court of Appeals,
Federal Circuit.
 May 9, 1994.
Rehearing Denied; Suggestion for
Rehearing In Banc
Declined July 7, 1994.
 
 Thomas S. Brandon, Jr., Gandy, Michener, Swindle & Whitaker, L.L.P., of Fort Worth, TX, argued for petitioners-appellants.
 Richard A. Schollmann, Attorney, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., Helene M. Goldberg, John Lodge Euler and Gerard W. Fischer.
 Before RICH, CLEVENGER, and RADER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Jerry and Lea Ann Weddel appeal the August 4, 1993, order of the United States Court of Federal Claims dismissing their petition for compensation under the National Childhood Vaccine Injury Compensation Act of 1986, 42 U.S.C. Sec. 300aa-1 to -26 (1988 & Supp. IV 1992) (the Act). Section 300aa-11(a)(5)(A) sets a limitation on the time for filing a petition applicable to parties who had a pending action in state court when the Act went into effect arising out of an alleged vaccine injury. Subsection (a)(5)(B) provides further that this class of persons "may not file" a petition while their state court action is still "pending." The court interpreted the latter provision as having a jurisdictional effect and dismissed the petition after concluding that when the Weddels filed their petition under the Act, they still had an action pending in state court against the manufacturer and the administrator of the vaccine they allege injured their daughter. We affirm.I
 
 
 2
 Cassie Ann Weddel suffers a residual seizure disorder that her parents allege resulted from a DPT shot administered on August 4, 1986. In April 1988, the Weddels filed a lawsuit in the Texas courts seeking compensation from the vaccine manufacturer and the doctor who inoculated their daughter. They later decided, however, to pursue a federal remedy in the United States Claims Court[1] under the Act.
 
 
 3
 To that end, on September 11, 1990, shortly before the statute of limitations would have barred relief under the Act, the Weddels' attorney mailed both a motion to dismiss to the clerk of the Texas court and a petition for compensation under the Act. The petition arrived at the Claims Court on September 12, satisfying the statute of limitations for filing set forth in subsection (a)(5)(A). The motion to dismiss arrived at the Texas court, however, one day after the petition was filed in the Claims Court. On June 24, 1992, the Special Master assigned to the case, having discovered this copendency problem, issued an order to show cause why the petition should not be dismissed for failure to comply with the Act's filing requirements. The Weddels responded on July 23, 1992, arguing that the dismissal of the Texas action was effective upon dispatch, or, in the alternative, that the court should deem the Vaccine Act petition to have been filed later than it actually was. The Special Master ordered dismissal, and the Weddels sought review by the Claims Court judge responsible for the case. In an order dated August 4, 1993, the court upheld the Special Master's decision to dismiss the petition. The Weddels then appealed to this court.
 
 
 4
 On appeal, the Weddels make three arguments:[2] First, they contend that under Texas law, dismissal as of right is effective upon dispatch, and not receipt, of the motion. Therefore, their state court action was dismissed on September 11, 1990--a day before the Claims Court clerk received their Vaccine Act petition. Second, they maintain that under federal law in this circuit, the effective date of their Claims Court filing was not September 12, because their petition initially lacked the cover sheet and some of the supporting materials required by the formal pleading rules. It was not until some time later, argue the Weddels, when the petition was finally married with a proper cover sheet and the balance of the medical documentation, that their filing was perfected. Finally, the Weddels assert that unlike the statute of limitations contained in the Act, the anti-copendency provision, though phrased in mandatory terms, has no jurisdictional effect or consequence.
 
 II
 
 5
 To evaluate the Weddels' first argument, we must examine the law of Texas and determine whether dismissal as of right is governed by the so-called mailbox rule or the receipt rule. The Supreme Court of Texas has held that dismissal as of right is effective the moment an appropriate motion is filed with the clerk of the court. See, e.g., Shadowbrook Apts. v. Abu-Ahmad, 783 S.W.2d 210, 211 (Tex.1990). Confirming our own sense that by "filed" the court meant filed, not mailed, are the interpretations of intermediate appellate courts holding that a paper is deemed "filed" as of its arrival at the clerk's office, not as of its mailing. See, e.g., Strawder v. Thomas, 846 S.W.2d 51 (Tex.Ct.App.1992).
 
 
 6
 In support of their position, petitioners cite first Texas Rule of Civil Procedure 5, which provides generally that the filing of any document is effective upon dispatch for purposes of all Texas deadlines, and second Rule 21a, which applies the mailbox rule specifically to service of process. Neither of these rules, however, is applicable to the facts of this case. By its terms, Rule 5 is inapposite when the relevant time deadline missed is not Texan, but federal. Rule 21a is likewise inapposite for the simple reason that filing a motion to dismiss is not service of process. We hold therefore that the Weddel's case was dismissed, at the earliest, when the clerk of the Texas court received their motion (i.e., on September 13, 1990). The next question, then, is whether the Weddels are correct that the effective date of the filing of their petition in the Claims Court was not September 12, when the bulk of the petition was filed in the clerk's office, but September 18, 1990, and January 17, 1991, respectively, when the inadvertently-omitted cover sheet and medical records finally arrived.
 
 III
 
 7
 Both this and the Weddels' final argument raise pure questions of federal law involving statutory interpretation and jurisdictional delineation. We of course review a trial court's resolution of such questions de novo. See, e.g., Dehne v. United States, 970 F.2d 890, 892 (Fed.Cir.1992); Munn v. Secretary of Health and Human Servs., 970 F.2d 863, 870 (Fed.Cir.1992).
 
 
 8
 It is fundamental that the proper function of the judicial department in matters of statutory interpretation is to carry out the will of the legislature by discerning, if possible, its "intent" on the question presented. Under the traditional rule of statutory interpretation, courts must look first to intrinsic evidence of intent (i.e., the textual language) alone. E.g., Toibb v. Radloff, 501 U.S. 157, 161-63, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991); see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194, 105 S.Ct. 658, 661-62, 83 L.Ed.2d 582 (1985) ("assumption that the ordinary meaning of th[e] language accurately expresses the legislative purpose"); United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940) ("There is, of course, no more persuasive evidence of [intent] than the words by which the legislature undertook to give expression to its wishes."). If it is clear "what those words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used," Matter of Sinclair, 870 F.2d 1340, 1343 (7th Cir.1989) (quoting Oliver Wendell Holmes, The Theory of Legal Interpretation, 12 Harv.L.Rev. 417, 417-19 (1899)), that intent will be imputed to the legislature and enforced notwithstanding conflicting agency pronouncements, Estate of Cowart v. Nicklos Drilling Co., --- U.S. ----, ----, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992); see, e.g., K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291-93, 108 S.Ct. 1811, 1817-19, 100 L.Ed.2d 313 (1988), or extrinsic evidence of a contrary intent, see, e.g., Darby v. Cisneros, --- U.S. ----, ----, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993); Wisconsin R.R. Comm'n v. Chicago, Burlington & Quincy R.R., 257 U.S. 563, 589, 42 S.Ct. 232, 237-38, 66 L.Ed. 371 (1922) (legislative history is only admissible to resolve ambiguity and not to introduce it); cf. Immigration and Naturalization Serv. v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (only language that meets the constitutional requirements of bicameralism and presentment has true legal authority).
 
 
 9
 An exception to this rule arises if the plain meaning produces a result that is not just "harsh," Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 576, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982), "curious," Tennessee Valley Auth. v. Hill, 437 U.S. 153, 172, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978), or even "stark and troubling," Estate of Cowart, --- U.S. at ----, 112 S.Ct. at 2594, but "so bizarre that Congress 'could not have intended' it," Demarest v. Manspeaker, 498 U.S. 184, 186, 190-91, 111 S.Ct. 599, 601-02, 603-04, 112 L.Ed.2d 608 (1991). Short of that, "the remedy lies with the law making authority, and not with the courts," lest there be a "usurpation" of democratic authority. Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 50-51, 75 L.Ed. 156 (1930). We turn now to the language of the Vaccine Act.A
 
 Vaccine Rule 2(a) provides:
 
 10
 A proceeding for compensation under the Vaccine Act shall be commenced by the filing of a petition accompanied by the documents required under 42 U.S.C. Sec. 300aa-11(c) and the Vaccine Rules....
 
 
 11
 Petitioners argue that what's sauce for the gander is sauce for the goose--if the anti-copendency requirement of Sec. 300aa-11(a)(5)(B) is to be read strictly, Rule 2(a) should be too. The Weddel filing therefore should be considered unperfected, and thus not a filing within the meaning of subsection (a)(5)(B), until the Claims Court clerk received the missing cover sheet and medical records.
 
 
 12
 The cardinal difficulty with this argument is that unlike subsection (a)(5)(B), Rule 2(a) does not say that a petitioner "may not file" a defective petition. Thus, the statute is at best (from petitioner's point of view) silent or ambiguous on the point. But there is pertinent legislative history that speaks to resolve any such possible doubt in meaning. The drafters of the rule made clear that:
 
 
 13
 The Committee does not intend to preclude filings from being deemed adequate because of minor, inadvertent omissions or when material is unavailable to the petitioner.
 
 
 14
 H.R.Rep. No. 247, 101st Cong., 1st Sess. 511 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 2237. Consistent with this intent, the Chief Special Master in Holmes v. Secretary of Health and Human Servs., No. 91-1343V, 1992 WL 121390 slip op. (Cl.Ct. May 7, 1992), held that a letter to the clerk of the court that contained only a terse recitation of the facts and expressed a desire for compensation under the Act was an adequate "filing" of a "petition" for purposes of the Act's time deadlines.
 
 
 15
 The petition in this case was far more complete than the one in Holmes, containing nine pages of allegations plus 500 pages of supporting medical documentation. The failure to include a cover sheet and certain medical records is, in light of Holmes, at most a minor and inadvertant flaw that cannot cause the petition filed to be deemed legally insufficient. The Special Master and the Court of Federal Claims so held, and we affirm their holding. We turn now to petitioner's final contention that the anti-copendency provision of the Act, 42 U.S.C. Sec. 300aa-11(a)(5)(B), has no jurisdictional effect.
 
 B
 
 16
 Section 300aa-11(a)(5)(A) of the Vaccine Act is a statute of limitations applicable to parties who had already filed a tort action in state court when the Act went into effect. It provides:
 
 
 17
 A plaintiff who on [October 1, 1988], has pending a civil action for damages for a vaccine-related injury may, at any time within two years after [October 1, 1988], or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition [in the Claims Court under the Act].
 
 
 18
 42 U.S.C. Sec. 300aa-11(a)(5)(A) (Supp. IV 1992) (emphasis added). In order to prevent copendency, however, the Act goes on to provide:
 
 
 19
 If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition [in the Claims Court under the Act].
 
 
 20
 Id. Sec. 300aa-11(a)(5)(B). As the government concedes, the Weddels met the requirements of subsection (a)(5)(A). We hold, however, on the basis of the undisputed facts of this case that they failed to meet those of subsection (a)(5)(B).
 
 
 21
 When these gatekeeping provisions are read together, see Amendola v. Secretary of Health and Human Servs., 989 F.2d 1180, 1184 (Fed.Cir.1993); see also National R.R. Passenger Corp. v. Boston & Maine Corp., --- U.S. ----, ----, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992) ("court must look to the structure and language of the statute as a whole"); Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 591-92, 7 L.Ed.2d 492 (1962) (citations omitted), the intent the ordinary person would infer from them is clear: If a party had already sued a vaccine manufacturer in state court, that party can opt-in to the no-fault federal compensation program instead, but not until the state court action is dismissed.
 
 
 22
 The natural reading of the language is that the two subsections create a jurisdictional window bounded by a statute of limitations on one side and an anti-copendency provision on the other. In order for the Claims Court to have had jurisdiction over the Weddels' case, they had to have filed their petition within two years of the effective date of the Act, but after the dismissal of the state court action. To hold otherwise would be unfaithful to the clear implication of the injunction "may not file" in subsection (a)(5)(B), and thus effectively would read that provision out of the statute. This we cannot do, see, e.g., Marbury v. Madison, 5 U.S. (1 Cranch) 137, 174, 2 L.Ed. 60 (1803) (courts must avoid interpretations that render a provision "mere surplusage, entirely without meaning"), absent an outcome that rises to the level of an "absurd result." Suffice it to say that the outcome dictated by the plain meaning in this case is not so bizarre that Congress could not possibly have intended it. Compare Demarest, 498 U.S. at 186, 190-91, 111 S.Ct. at 601-02, 603-04 (per diem compensation statute that used the generic term "witnesses" without qualification applied, as a matter of plain meaning, even to prisoners called to testify, particularly in view of the fact that Congress had expressly excepted prisoners from a similar provision; the outcome did not amount to an absurd result and was given effect despite evidence of a contrary intent in the legislative history) with Green v. Bock Laundry Mach. Co., 490 U.S. 504, 509-11, 109 S.Ct. 1981, 1984-86, 104 L.Ed.2d 557 (1989) (Congress could not possibly have intended Fed.R.Evid. 609(a) to set a double standard favoring defendants not just in criminal cases, but in civil cases too.) and id. at 527-28, 109 S.Ct. at 1994-95 (Scalia, J., concurring). Indeed, there is evidence in the legislative history that tends to confirm that this is in fact the result Congress intended. See H.R.Rep. No. 247, 101st Cong., 1st Sess. 511 (1989) ("a plaintiff ... whose action is still pending may not enter the compensation program") (emphasis added), reprinted in 1989 U.S.C.C.A.N. 1906, 2237. Congress actually amended the statute in 1989 to clear up any ambiguity on this point, saying emphatically: A "petitioner must petition to have his or her action dismissed and may not simply allow the action to lie dormant during the [federal] compensation proceeding." Id.
 
 
 23
 For these reasons, we must reject petitioner's third argument insofar as it would have us hold that the Court of Federal Claims has jurisdiction over a case in which the petition was not filed within the two-sided time window created by the statute. That is not to say, however, that the Weddels may have no federal remedy. The Weddels filed their petition within the limitations period specified in subsection (a)(5)(A), and thus satisfied the policy of repose underlying it, although they failed to satisfy the anti-copendency requirement of subsection (a)(5)(B). We need not decide if equitable tolling would be available in such a situation, see Irwin v. Department of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), even if, as the Claims Court has held, equitable tolling generally is not available under the Vaccine Act because the limitations period contained in the Act is a statute of repose, see Smith ex rel. Smith v. Department of Health and Human Servs., 26 Cl.Ct. 116 (1991), aff'd without op., 983 F.2d 1088 (Fed.Cir.1992). The Weddels having failed to raise the equitable tolling argument before the Special Master, that issue is neither ripe for adjudication nor presently before this court.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Congress changed the name of this tribunal in 1992 from the United States Claims Court to the United States Court of Federal Claims. See Federal Courts Administration Act, Sec. 902(a), 106 Stat. 4506, 4516 (1992)
 
 
 [2]
 The government correctly observes that the Weddels failed to raise before the Special Master the substantive due process and equitable tolling arguments they now press. Congress has expressly forbidden us to consider such arguments. See Vaccine Rule 8(f) (any "argument not raised specifically in the record before the special master shall be considered waived"); Jay v. Secretary of Health and Human Servs., 998 F.2d 979, 983 (Fed.Cir.1993). We note, however, that the equitable tolling argument will not be ripe for adjudication until a second petition for compensation under the Act is filed and dismissed. See infra section III.B