CENCAST SERVICES, L.P.,
et al., Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 02–1916–T to 02–1925–T.

United States Court of Federal Claims.

Sept. 30, 2004.

James P. Joseph, Arnold & Porter, Washington, D.C. for plaintiff. Stuart E. Seigel, Draney Information Services Corporation, Boulder City, Nevada, of counsel.

William K. Drew, Trial Attorney, Mildred L. Seidman, Chief, Court of Federal Claims Section, Eileen J. O'Connor, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

### OPINION AND ORDER

GEORGE W. MILLER, Judge.

These consolidated tax refund cases [1] are before the Court on plaintiffs' Motion for Summary Judgment and defendant's Motion for Partial Summary Judgment. For the following reasons, plaintiffs' motion for summary judgment is DENIED, and defendant's motion for partial summary judgment is GRANTED.

### Introduction

This case concerns plaintiffs' efforts to arrange their affairs, and the affairs of their

---

1. The cases were consolidated by Judge Futey's Order of January 7, 2003. The consolidated cases were reassigned to the undersigned on January 16, 2004.

clients, in order to minimize their liability to pay certain taxes.[2] In order to understand these efforts, it is helpful to review the types of taxes at issue in this case and how they are calculated and collected.

Chapters 21 through 25, Subtitle C, of the Internal Revenue Code of 1986 ("I.R.C." or "Code") govern what are known as "employment" or "payroll" taxes on individuals and their employers. Employment taxes are separate from federal income tax and function as excise taxes levied on employers and employees, based on the wages employees receive in return for the services provided to employers. *See* Def. Mot. Part. Summ. Judg. at 14; Pl. Mot. Summ. Judg. at 8.

This case involves the taxes imposed by Chapter 21, I.R.C. §§ 3101–3128, relating to the Federal Income Contribution Act ("FICA"), and by Chapter 23, I.R.C. §§ 3301–3311, relating to the Federal Unemployment Tax Act ("FUTA"). The case also involves I.R.C. § 3401, set forth in Chapter 24, Collection of Income Tax at Source on Wages. *See* Def. Mot. Part. Summ. Judg. at 14; Pl. Mot. Summ. Judg. at 11.

FICA taxes are imposed on both employees and employers.[3] FICA taxes generate revenue to fund Social Security and Medicare benefits programs and are often referred to as Social Security taxes. I.R.C. § 3111(a) establishes that under FICA "there is hereby imposed on every employer an excise tax, with respect to having individuals in his employ, equal to [6.2 percent] of the wages (as defined in section 3121(a)) paid by him with respect to employment (as defined in section 3121(b))."

I.R.C. § 3121(a) defines the term "wages" as "all remuneration for employment[.]" I.R.C. § 3121(a)(1) functions as a cap on wages that are taxable under FICA by excluding from the definition of the term "wages"

that part of remuneration which, after remuneration equal to the contribution and benefit base (as determined under section 230 of the Social Security Act) with respect to employment has been paid to an individual by *an employer* during the calendar year with respect to which such contribution and benefit base is effective, is paid to such individual by such employer during such calendar year.

I.R.C. § 3121(a)(1) (emphasis added). Therefore, FICA establishes as a "wage base" all remuneration paid to an individual by an employer equal to the contribution and benefit base established by the Social Security Act during a given year. Any remuneration beyond that amount does not fall within the definition of "wages" taxable under FICA.

As the government points out, the application of the FICA wage base makes the identification of the "employer" that is considered to have paid the wages important for purposes of determining and computing FICA tax liability:

If, for example, the FICA taxable wage cap were $50,000, and an employee received $100,000 in compensation from one employer, the first $50,000 in remuneration paid and received during the calendar year would be "wages." The remaining $50,000 in remuneration, however, would not be treated as wages for FICA tax purposes. Thus, the amount of FICA tax due from both the employer and the employee, assuming a rate of 6.2 percent, would be $3,100. If, however, the employee received $50,000 in remuneration from ... two employers, the $50,000 in remuneration received from each employer ($100,000 total) would be deemed wages for FICA tax purposes. In that case, the total amount of FICA taxes due would be $6,200 from the employee and $3,100 from *each of*

---

2. "Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." Learned Hand, J., *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir.1934) (citations omitted).

3. The FICA taxes at issue in this case are the employers' portion of FICA taxes, for which the Internal Revenue Service ("IRS") assessed plaintiffs. In accordance with IRS policy, the employees' portion of FICA taxes was not assessed and is therefore not at issue in this case. *See* Def. Mot. Part. Summ. Judg. at 15 (citing Rev. Rul. 74–75, 1974–1 C.B. 19).

the employers (totaling $6,200 in employers' taxes).

Def. Mot. Part. Summ. Judg. at 16 (emphasis added).

FUTA taxes are imposed on employers and provide revenue for the purposes of federal-state unemployment compensation programs. I.R.C. § 3301 establishes that under FUTA:

> there is hereby imposed on every employer (as defined in section 3306(a)) for each calendar year an excise tax, with respect to having individuals in his employ, equal to ... 6.2 percent ... of the total wages (as defined in section 3306(b)) paid by him during the calendar year with respect to employment (as defined in section 3306(c)).

I.R.C. § 3301.

I.R.C. § 3306(b) defines the term "wages" as "all remuneration for employment[.]" I.R.C. § 3306(b)(1) functions as a cap on wages that are taxable under FUTA by excluding from the definition of the term "wages" "that part of the remuneration which, after remuneration ... equal to $7,000 with respect to employment has been paid to an individual by *an employer* during any calendar year, is paid to such individual by such employer during such calendar year." I.R.C. § 3306(b)(1) (emphasis added). Therefore, FUTA establishes as a "wage base" $7,000 of the remuneration paid to an individual by an employer during a given year. Any remuneration beyond that amount does not fall within the definition of "wages" taxable under FUTA.

Again, it is important to identify the appropriate "employer" when calculating an employee's FUTA taxable wage base. As the government illustrates:

> For example, the annual FUTA cap was $7,000. The wages of an employee who earned $50,000 per year from a single employer were subject to the tax on only the

first $7,000; but if he received those same [FUTA] wages from two employers, then the tax is imposed on the first $7,000 paid by each employer—i.e., twice the FUTA liability.

Def. Mot. Part. Summ. Judg. at 9.

As the facts of this case illustrate, it can be difficult to ascertain the appropriate FICA taxable wage base if an employee works for multiple employers in a given year and only one of them or a third party pays the employee his wages attributable to services performed for each of the multiple employers. The issue is whether in such a case the entity paying the wages can aggregate the wages paid for purposes of calculating the wage base for FICA and FUTA taxes.

Unfortunately, neither FICA nor FUTA explicitly states who is to be considered an "employer" as that term is used in the definition of wages in I.R.C. §§ 3121(a) and 3306(b).[4]

There are, however, other provisions of the Code that provide guidance in determining the appropriate employer for calculating wages under FICA and FUTA. I.R.C. § 3121(b) defines the term "employment," for FICA purposes, as "any service, of whatever nature, performed ... by an employee for the person employing him[.]" I.R.C. § 3121(d) provides four definitions of the term "employee" for FICA purposes. The most relevant definition states that an employee is "any individual who, under the common law rules applicable in determining the employer-employee relationship, has the status of an employee[.]" I.R.C. § 3121(d)(2). Employees under this definition are generally referred to as "common law employees," and the employer is known as the "common law employer." *See* Def. Mot. Part. Summ. Judg. at 17; Pl. Mot. Summ. Judg. at 8–9.

---

4. I.R.C. § 3306(a)(1) does define "employer," for FUTA purposes, as any person who "(A) during any calendar quarter in the calendar year or the preceding year paid wages of $1,500 or more, or (B) on each of some 20 days during the calendar year or during the preceding calendar year, each day being in a different calendar week, employed at least one individual in employment for some portion of the day." As will be discussed, the definition of employer in § 3306(a)(1) was meant to narrow the number of small employers who could exempt themselves from paying FUTA excise taxes by paying large numbers of employees to complete projects in short periods of time. Section 3306(a)(1), therefore, does not define "employer" for the purpose of calculating the FUTA wage base.

FUTA defines the term "employment" in a manner similar to FICA. Generally, employment is "any service, of whatever nature, performed after 1954 by an employee for the person employing him[.]" I.R.C. § 3306(c). *See* Def. Mot. Part. Summ. Judg. at 18.

Though it governs withholding of income taxes rather than employment taxes, another section of the Code, contained in Chapter 24, provides a definition of the term "employer" that gives additional guidance in calculating FICA and FUTA wage bases. I.R.C. § 3401(d) defines an employer as "the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person." Under § 3401(d)(1), "if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' (except for purposes of subsection (a)) means the person having control of the payment of such wages ...." In language almost identical to the FICA and FUTA provisions, § 3401(a), defines the term "wages" as "all remuneration for services performed by an employee for his employer[.]" Therefore, except for purposes of determining "wages," the party in control of the payment of wages is the "employer."

The employer described by I.R.C. § 3401(d)(1) is referred to as the "statutory employer." Chapter 24 establishes that the statutory employer, having control of the payment of wages, is responsible for withholding, paying and reporting employees' federal income taxes. Beginning with the Supreme Court's decision in *Otte v. United States*, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974), courts have incorporated the § 3401(d) definition of "employer" into FICA and FUTA. *See* discussion *infra* Section D.2. Therefore, statutory employers having control of the payment of wages are responsible for withholding, paying and reporting not only federal income taxes, but FICA and FUTA taxes, as well.

### Facts [5]

The parties have stipulated to the following facts. From 1992—1996, E.P. Talent Services, L.P. ("E.P."), provided, among other things, payroll services to production companies that developed, produced, and distributed motion pictures, television programs and commercials ("Production Companies"). *See* Joint Stip. of Facts at 5–6.

E.P. entered into arrangements with production worker employees ("PWEs") and placed them with the Production Companies to work on production projects. The PWEs often performed services for multiple production companies during a single year. *See* Joint Stip. of Facts at 5–6.

Each week the PWEs worked on a particular production, they submitted records to E.P. indicating the hours they worked on the production. After auditing the time records to ensure compliance with hour and schedule restrictions under the relevant industry standards, E.P. calculated the PWEs' gross pay. *See* Joint Stip. of Facts at 6.

After calculating the gross pay of each PWE, E.P. subtracted the appropriate withholdings (e.g., pension and insurance plan payments, income and FICA taxes) and then prepared a paycheck for the amount of net pay that it had calculated. *See* Joint Stip. of Facts at 7.

The paychecks prepared by E.P. were drawn on its own accounts and paid from its own funds. The paychecks were then delivered to the Production Companies, along with invoices, and the paychecks were given to the PWEs. Under the terms of the contracts between E.P. and the Production Companies, the Production Companies were required to reimburse E.P. for payroll costs. Thus, the invoices delivered to the Production Companies generally included gross pay,

---

5. The facts set forth in this opinion relate specifically to the case of *E.P. Talent Services, L.P. v. United States*, Fed. Cl. No. 02–1923 T, one of the cases consolidated by Judge Futey. The facts are substantially identical to the facts in the other consolidated cases. Some of the consolidated cases, including the lead case, however, involve only claims for refund of taxes under FUTA, rather than claims for tax refunds under both FUTA and FICA. Accordingly, this opinion is based on facts in *E.P. Talent Services, L.P.*—not the facts in the lead case—in order to address the proper means of computing the wage base for both FICA and FUTA.

the cost of benefits and other allowances, and E.P.'s fees for services.

In addition, the invoices generally included, as a component of the bill, the FICA and FUTA taxes that would be due from the Production Companies if the Production Companies were treated as the PWEs' employers for federal employment tax purposes. *See* Joint Stip. of Facts at 7. E.P. rebated to some of the Production Companies a portion of the fees that it calculated with reference to those FICA and FUTA taxes. In other cases, the invoices submitted by E.P. to some of the Production Companies reflected only a flat fee, without a breakdown of the components of such fee. Under the contract terms, the invoices were payable within 24 hours, but in practice the Production Companies often took between five and ten days, and sometimes longer, to pay the invoices. In a few instances, some Production Companies did not pay E.P.'s invoices at all. *See id.* at 7–8.

For the PWE paychecks that it calculated, prepared and issued, E.P. deposited with the IRS federal income taxes and FICA and FUTA taxes with respect to the remuneration paid to the PWEs for their work for the Production Companies. For each FICA Calendar Quarter, E.P. filed with the IRS an Employer's Quarterly Federal Tax Return (Form 941) and paid the amount of tax due. For each FUTA Calendar Year, E.P. filed with the IRS an Employer's Annual Federal Unemployment Tax Return (Form 940) and paid the amount of tax due. At the end of each tax year, E.P. also provided Form W–2s to the PWEs for whom it calculated, prepared and issued paychecks during the year.[6] *See* Joint Stip. of Facts at 8.

In computing the amount of taxable wages for the PWEs under FICA, E.P. treated itself, rather than the Production Companies, as the employer of the PWEs for purposes of calculating the contribution and benefit base and reporting the amount of tax due on each of its Forms 941. Similarly, in computing the amount of taxable wages for the PWEs under FUTA, E.P. treated itself as the employer of the PWEs for purposes of calculating the $7,000 FUTA wage base and reporting the amount of tax due on each of its Forms 940. *See* Joint Stip. of Facts at 9.

After examining E.P.'s FICA and FUTA liabilities for the periods at issue, the IRS took the position that the Production Companies, not E.P., were the employers of the PWEs and should be considered to have paid the remuneration to the PWEs for purposes of computing the amount of the wage base for FICA and FUTA purposes.[7] *See* Joint Stip. of Facts at 9.

On August 27, 2001, the IRS assessed FICA taxes due from E.P. for each FICA Calendar Quarter and each FUTA Calendar Year from 1992 to 1996, together with related penalties and interest. E.P. made payments on both the FICA and FUTA assessments. On April 19, 2002, E.P. mailed to the IRS claims for refund for the portions of the FICA and FUTA taxes that it claims were overpaid. By notice sent on May 21, 2002, the IRS disallowed E.P.'s claim for refund. *See* Joint Stip. of Facts at 2–5.

On December 20, 2002, E.P. filed a complaint in the Court of Federal Claims for payments of the portions of the FICA and FUTA assessments it claims were overpaid. The government counterclaimed on May 14, 2003 for the unpaid balances of the assessments of FICA and FUTA taxes and penalties that it claimed were due from plaintiff, together with interest. *See* Joint Stip. of Facts at 2.

## Discussion

### A. Issue

The issue to be resolved on the parties' cross-motions is "[w]hether plaintiffs, having controlled the payment of wages within the meaning of § 3401(d)(1) of the Internal Reve-

---

6. The parties stipulated that during the period at issue, E.P. controlled the payment of wages to the PWEs within the meaning of § 3401(d)(1) of the Code, as in effect during those periods. Therefore, E.P. was responsible for reporting and paying over to the United States the FICA and FUTA taxes with respect to the paychecks that it calculated, prepared and issued to the PWEs. *See* Joint Stip. of Facts at 8.

7. The assessments of tax in dispute in plaintiff's claim and in the government's counterclaim are based upon the position of the IRS as described in the text. *See* Joint Stip. of Facts at 9.

nue Code of 1986, are considered to be the employers who have paid such remuneration to the workers for purposes of § 3121(a)(1) [FICA taxes] and § 3306(b)(1) [FUTA taxes] ...." Parties' Joint Preliminary Status Report of July 22, 2003 at 3.

### B. The Parties' Arguments [8]

The parties disagree about the meaning of "employer" in I.R.C. §§ 3121(a) and 3306(b), which establish the wage bases for calculating FICA and FUTA excise taxes.

Plaintiffs contend that they are the only employers to be considered in determining wage bases for calculating FICA and FUTA excise taxes. Plaintiffs argue first that, under a plain language reading of §§ 3121(a) and 3306(b), wage bases are to be calculated in reference *only* to the employers in control of the payment of wages. Because they, and not the Production Companies, controlled payment of wages to the PWEs, plaintiffs maintain that they are the only parties to be considered employers for the purpose of calculating FICA and FUTA wage bases. Therefore, plaintiffs argue that they properly aggregated the wages they paid to the PWEs for purposes of calculating their FICA and FUTA tax liability. *See* Pl. Mot. Summ. Judg. at 2–3.

To support their plain language argument, plaintiffs rely on the language of the FICA and FUTA provisions focusing on wages paid to employees.

Plaintiffs emphasize that I.R.C. § 3111(a) specifically makes reference to " 'wages *paid* by [an employer] with respect to employment' " in establishing the FICA excise tax. *See* Pl. Mot. Summ. Judg. at 13–14 (quoting I.R.C. § 3111(a) (emphasis added by plaintiffs)). Therefore, plaintiffs should be considered the employers. *See id.* at 13–14

Plaintiffs point out that, for FICA purposes, I.R.C. § 3121(a)(1) *excludes* from the definition of the term "wages" " 'remuneration ... *paid to an individual by an employer* [.]' " Pl. Mot. Summ. Judg. at 20 (quoting

I.R.C. § 3121(a)(1) (emphasis added by plaintiffs)).

Plaintiffs focus on the fact that the amount of wages taxable under FICA is established by reference to those wages *paid by an employer*. This language, plaintiffs reason, establishes that the FICA taxable wage base is calculated by reference to the employer who pays wages, not the employer (or employers) for whom employees provide services. *See* Pl. Mot. Summ. Judg. at 20.

Plaintiffs next point out that "similarly, in calculating FUTA taxes, wages are defined as 'all remuneration for employment,' except that taxable FUTA wages [exclude] 'that part of the remuneration which ... has been paid to an individual by an employer[.]' " Pl. Mot. Summ. Judg. at 20 (quoting I.R.C. §§ 3306(b), 3306(b)(1) (emphasis added by plaintiffs)).

Plaintiffs also cite I.R.C. § 3306(a), which plaintiffs claim defines "employer," for FUTA purposes as, " 'with respect to any calendar year, any person who ... during any calendar quarter in the calendar year or the preceding calendar year *paid wages* of $1,500 or more[.]' " Pl. Mot. Summ. Judg. at 20 (citing I.R.C. § 3306(a) (emphasis added by plaintiffs)). Again, plaintiffs point out that the FUTA definition of "employer" refers to one who pays employees.

The final provision plaintiffs cite to support their position is I.R.C. § 3401(d)(1). See Pl. Mot. Summ. Judg. at 15. Though plaintiffs allow that I.R.C. § 3401(d) refers to a common law employer, they point to the exception under I.R.C. § 3401(d)(1). Plaintiffs assert that under I.R.C. § 3401(d)(1) " 'if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" [(except for purposes of subsection (a))] means the person having control of the payment of such wages.' " *Id.* at 15 (quoting I.R.C. § 3401(d)(1)) (bracketed language excluded from plaintiffs' brief; emphasis added).

---

**8.** The Court referred to E.P. Talent Services, L.P., as the plaintiff for purposes of reciting the facts. E.P. and the other plaintiffs in the consoli-

dated cases are referred to in this discussion as "plaintiffs."

Plaintiffs argue that while the common law definition of the term "employer" has been incorporated into FICA and FUTA by *Otte* and subsequent decisions,[9] the statutory employer exception to that definition has also been incorporated. *See* Pl. Mot. Summ. Judg. at 16–17.

Plaintiffs' second argument is that their understanding of I.R.C. §§ 3121(a) and 3306(b) is confirmed by congressional intent to place the responsibility for calculating, reporting and paying FICA and FUTA taxes at the point of control. For support, they cite the legislative history of the Code provisions. *See* Pl. Mot. Summ. Judg. at 22–24.

Plaintiffs third argument is that the applicable Treasury Regulations are in accord with their reading of the FICA and FUTA provisions, not the government's. Plaintiffs claim those regulations bar aggregating wages for purposes of calculating wage bases in situations involving multiple employment relationships *only* where the employee "receives remuneration from more than one employer." *See* Pl. Mot. Summ. Judg. at 24 (quoting Treas. Reg. § 31.3121(a)(1)–1(a)(3)). Plaintiffs reason that, as a result, aggregating wages is not barred when, in their situation, there are multiple employment relationships and the employee is paid by only one employer. *See* Pl. Mot. Summ. Judg. at 24–26. Plaintiffs also contend the Treasury Regulations employ the same "wages paid" language as the Code provisions at issue.

The government argues that the Production Companies are to be considered the PWEs' employers for purposes of calculating FICA and FUTA taxable wage bases. Like plaintiffs, the government relies on the plain language of the Code provisions at issue for support.

The government does not dispute plaintiffs' claims that the language of I.R.C. §§ 3121(a) and 3306 focuses on wages paid by the employers. The focus, however, is trained on the employers in order to establish the responsibility to calculate, pay and report employment taxes. The government asserts that, regardless of the tax liability,

the wage bases themselves are calculated with respect to the common law employers. The government relies on the language of § 3401(d)(1), the same exception to the statutory definition of "employer" upon which plaintiffs rely. See Def. Opp. at 4–5.

The government allows that an exception is created by the language of I.R.C. § 3401(d)(1), which states that "if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' (except for purposes of subsection (a)) means the person having control of the payment of such wages." However, the statutory employer exception, by virtue of the parenthetical "(except for purposes of subsection (a))," does not apply to the definition of "wages" under § 3401(a). Thus, in defining the term "wages" under § 3401, the only employer to be considered is "the person for whom an individual performs or performed any service[.]" See Def. Opp. at 5 (citing I.R.C. § 3401(d)).

The government argues that when the courts in *Otte v. United States,* 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974), and the cases that followed that decision incorporated the I.R.C. § 3401(d)(1) exception to "employer" into FICA and FUTA, they also included the exception to the exception. Therefore, the production companies for whom the PWEs provided services should be considered the employers. The government also argues that while the courts have incorporated the § 3401(d) definition of employer into FICA and FUTA, the definition has only been incorporated for purposes of "(1) withholding with respect to the employees' shares of FICA and (2) accounting for, reporting, and paying the FICA and FUTA taxes." See Def. Opp. at 6.

For additional support, the government relies on the legislative history of the provisions at issue, as well as interpretations of those provisions by the Treasury Department and the courts. The government lays out a comprehensive history of the employment tax provisions of the Code. Throughout that history, the government argues, Con-

9. *See* discussion *infra* Section D.2.

gress intended to make revenue collection easier and therefore placed responsibility for the calculation, reporting and payment of FICA and FUTA taxes on one employer—the employer responsible for withholding federal income tax. Depending on who controlled payment of wages, the responsibility rested on either the statutory or common law employer. However, the government cites legislative history showing that Congress intended to focus on the common law employer for the purpose of calculating the FICA and FUTA wage bases. The government also cites 67 years of IRS revenue rulings and Treasury Regulations interpreting the FICA and FUTA statutes in a manner consistent with such congressional intent.

### C. Jurisdiction and Standard of Review

The United States Court of Federal Claims has jurisdiction to hear claims for refunds of taxes under 28 U.S.C. § 1491, stating that it "shall have jurisdiction to render judgment upon any claim against the United States founded upon ... any Act of Congress or any regulation of an executive department ...." 28 U.S.C. § 1491 (2000). Under I.R.C. § 7422(a), no suit may be maintained for the recovery of any internal revenue tax until a claim for refund has been filed. Plaintiffs filed with the IRS their claim for a refund on April 19, 2002, which was less than two years after they paid the taxes, as required by I.R.C. § 6511(a). Also, pursuant to I.R.C. § 6532(a), plaintiffs commenced this action within two years of the date that the IRS mailed them notice of disallowance of such claims. *See* Pl. Mot. Summ. Judg. at 3.

The parties bring their cross-motions under Rule 56 of the Rules of the Court of Federal Claims. The parties' motions rely solely on the facts agreed upon in their Joint Stipulation of Facts filed November 10, 2003. There are no genuine issues of material fact. Summary judgment will be granted to the party entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The issue to be resolved, whether the IRS interpreted the Internal Revenue Code cor-

rectly in determining that the Production Companies were the PWEs' employers for purposes of calculating the PWEs' FICA and FUTA wage bases, is a matter of statutory interpretation. The parties suggest different approaches to the interpretation of the statutes at issue.

Plaintiffs advocate that the Court should employ a plain language interpretation of the Code provisions and should avoid interpreting the provisions inconsistently.

Plaintiffs argue that the word "paid" should be given its plain and commonly understood meaning. According to plaintiffs, if the government's interpretation of the provisions at issue prevails, the word "paid" in I.R.C. §§ 3121(a) and 3306(b) would be understood as "considered to have paid." Plaintiffs claim that the government would have FICA and FUTA wage bases calculated by reference to wages attributable to services performed for each of the Production Companies, even though they did not actually pay wages to the PWEs. Thus, the Production Companies would have to be "considered to have paid" the employees. See Pl. Resp. at 6–7 (citing *Weddel v. Secretary of the Department of Health and Human Services,* 23 F.3d 388, 391 (Fed.Cir.1994) ("If it is clear what ... [the words in a statute] would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used, that intent will be ... enforced ....") (citations omitted); *Selman v. United States,* 204 Ct.Cl. 675, 498 F.2d 1354, 1356 (1974) ("a clear and unambiguous statute speaks for itself .... [T]he unambiguous wording of a statute shall be given its plain and commonly understood meaning.")).

Plaintiffs argue that if Congress wished to alter the meaning of the word "paid" in §§ 3121(a) and 3306(b), it would have done so explicitly. See Pl. Resp. at 7–8. Plaintiffs cite the FICA and FUTA provisions establishing a special rule relating to an employer (a "successor employer") that acquires another employer (a "predecessor employer") as an example. "This rule provides that wages paid by a predecessor employer during the calendar year of acquisition 'shall be considered as having been paid by such successor employer.'" See *id.* at 7 (citing I.R.C.

§§ 3121(a)(1) and 3306(b)(1)). Plaintiffs argue that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." See *id.* at 8 (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citations omitted)).

Plaintiffs also argue that the phrase "paid by an employer" in I.R.C. §§ 3121(a) and 3306(b) should be interpreted consistently throughout FICA and FUTA. Under the government's reading of FICA and FUTA, "paid by an employer" means one thing for purposes of wage base provisions and something else for all other purposes of FICA and FUTA (such as determining responsibility to calculate, withhold, report and pay employment taxes). According to plaintiffs, such a result would violate a fundamental rule of statutory construction that identical terms in the same statute should be interpreted in the same manner. See Pl. Resp. at 5 (citing *Commissioner v. Keystone Consolidated Industries*, 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993)). Particularly in the realm of employment taxation, plaintiffs argue

> Congress intended ... to coordinate the income-tax withholding system with FICA and FUTA. In both instances, Congress did so to promote simplicity and ease of administration. Contradictory interpretations of substantially identical definitions do not serve that interest. It would be extraordinary for Congress pursuing this interest to intend, without ever saying so, for identical definitions to be interpreted differently.

*Id.* at 6 (quoting *Rowan Cos. v. United States*, 452 U.S. 247, 257, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981)).

The government argues that plaintiffs' so-called plain language interpretation is incorrect as a matter of law. The government notes that plaintiffs' quotation of I.R.C. § 3401(d) in their Motion for Summary Judgment omits "(except for purposes of subsection (a))." "Thus, plaintiffs ignore the pertinent exception to this statutory provision while attempting to rely on the 'clear statutory language.' The statutory language is, indeed, clear. When cited in full, however," the government argues, "it clearly supports defendant's position, not plaintiffs'." Def. Opp. at 5.

Though the government does not address the matter, it should be noted that plaintiffs' argument that identical words in the same statute should be interpreted the same way is not without exception. The Supreme Court in *United States v. Cleveland Indians Baseball* stated that "[a]lthough we generally presume that 'identical words used in different parts of the same act are intended to have the same meaning,' the presumption 'is not rigid,' and 'the meaning [of the same words] well may vary to meet the purposes of the law.'" 532 U.S. 200, 213, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) (quoting *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932)). The Court also invoked the more forceful admonition that "[t]he tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them ... has all the tenacity of original sin and must constantly be guarded against." *Cleveland Indians*, 532 U.S. at 213, 121 S.Ct. 1433 (quoting Cook, *"Substance" and "Procedure" in the Conflict of Laws*, 42 Yale L.J. 333, 337 (1933)). Thus, while interpreting identical terms the same way is generally presumed, that rule of interpretation is not rigidly applied.

Aside from its plain language argument, the government urges deference to the IRS's regulations and administrative rulings interpreting FICA and FUTA since at least 1937.

> In the decades following the decisions ... of the Supreme Court upholding the constitutionality of the Social Security Act in 1935, many administrative rulings interpreted and explained the application of the employment tax statutes enacted therein and in subsequent legislation. Because many key statutory provisions remain in the Code essentially unchanged, insofar as relevant to the instant matter, this long history of administrative interpretation,

going back shortly after the enactment of the 1935 Act, is entitled to considerable deference in interpreting these statutes. Def. Mot. Part. Summ. Judg. at 28 (citing *United States v. Zenith Radio Corp.*, 64 C.C.P.A. 130, 562 F.2d 1209, 1219 (1977), *aff'd* 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978)).

The government's suggested manner of interpretation is appropriate. "A long-continued, uniform administrative practice, if not contrary to or inconsistent with law, is entitled to great weight, particularly where, as here, those charged with its administration adopted that practice contemporaneously with the inception of the statute and when Congress has repeatedly reenacted the statute without change, and when Congress had failed to revise the statute in the face of such administrative practice ...." *Zenith*, 562 F.2d at 1219 (citations omitted). More specifically, " 'Treasury regulations and interpretations long continued without substantial change applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.' " *Cleveland Indians*, 532 U.S. at 220, 121 S.Ct. 1433 (quoting *Cottage Savings Assn. v. Commissioner*, 499 U.S. 554, 561, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991)) (citing *United States v. Correll*, 389 U.S. 299, 305–06, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967)); *see also Zenith*, 562 F.2d at 1219–20; *cf. Federal National Mortgage Assn. v. United States*, 379 F.3d 1303, 1309 (Fed.Cir.2004) ("a recent pronouncement implementing a new statute with no precedent in tax laws ... is not entitled to the great weight given settled agency interpretations of long vintage").

In light of this standard, the history of the Code provisions in issue must be reviewed to determine if they have been, in relevant part, unamended or substantially reenacted and if Treasury Regulations and interpretations relating to those provisions have long continued without substantial change. If the IRS interpreted the provisions incorrectly, or if the meaning of the provisions evolved so as to render the interpretations incorrect as a matter of law, the IRS's interpretation will not be entitled to deference. If, however, the Code provisions have not been changed or interpreted in such a way as to affect the validity of the IRS's understanding of them, then it is appropriate to defer to the IRS's interpretation in construing the meaning of the statutory provisions.

### D. Analysis

1. The IRS Has Adopted a Long–Continued, Uniform Administrative Practice Not Contrary to or Inconsistent With the Law

   a. Social Security Act of 1935, Titles VIII and IX

The statutes that were predecessors to the current FICA and FUTA chapters of the Code were enacted as Titles VIII and IX of the Social Security Act of 1935 ("1935 Act"), ch. 531, 49 Stat. 620 (1935). Titles VIII and IX imposed taxes in connection with the Old Age Benefits program under Title II and a federal-state unemployment program under Title III.

Like FICA, Title VIII imposed an excise tax on employers. Section 804 established that "In addition to other taxes, every employer shall pay an excise tax, with respect to having individuals in his employ, equal to the following percentages of wages (as defined in section 811) paid by him after December 31, 1936, with respect to employment (as defined in section 811) after such date."

Section 811(a) defined wages as:

all remuneration for employment ... except that such term shall not include that part of the remuneration which, after remuneration equal to $3,000 has been paid to an individual by an employer with respect to such employment during any calendar year, is paid to such individual by such employer with respect to employment during such calendar year.

Employment was defined by § 811(b) as "any service, of whatever nature, performed in the United States by an employee for his employer[.]" As is the case with FICA, Title VIII did not define the term "employer."

Title IX imposed an excise tax on employers, too. The language of § 907(a) was similar to the current I.R.C. § 3306(a)(1) in that it defined "employer" as "not including any

person unless on each of some twenty days during the taxable year, each day being in a different calendar week, the total number of individuals who were in his employ for some portion of the day ... was eight or more." Section 907(b), like the current I.R.C. § 3306(b), defined wages as "all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash," and § 907(c) defined employment generally as "any service, of whatever nature, performed within the United States by an employee for his employer[.]"

A wage cap of $3,000, similar to the current $7,000 wage cap under I.R.C. § 3306(b)(1), was added by the Social Security Act Amendments of 1939, ch. 666, § 608, 53 Stat. 1360, 1393 (1939).

### b. Revenue Act of 1942, Section 172

Section 172 of the Revenue Act of 1942 ("1942 Act"), ch. 619, 56 Stat. 798, 884, established income tax withholding on wages in the Internal Revenue Code. The income tax withholding provisions were enacted in conjunction with the Victory Tax, which was imposed in order to provide additional revenue to fund the government's activities in World War II. The Victory Tax increased the income tax burden on individuals and "the withholding of income tax speeded up the collection of revenue and decreased the likelihood that individuals would be unable to pay their much larger tax bills at the due date thereof." Def. Mot. Part. Summ. Judg. at 24. The Revenue Act added § 466(a) to the Internal Revenue Code of 1939, which imposed the withholding tax on wages, defined by § 465(b) as "remuneration ... for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash." 1942 Act § 172, 56 Stat. at 887. Section 465(e) of the Code went on to define the term "employer" as "any person for whom an individual performs any service, of whatever nature, as the employee of such person." 1942 Act § 172, 56 Stat. at 888.

As the government points out, these precursors to current Code provisions dealing with income tax withholding and Social Security and unemployment excise taxes cast the definition of "wages" in terms of "remuneration earned in a common-law employment relationship." Def. Mot. Part. Summ. Judg. at 25.

The Revenue Act of 1942 also added § 465(c) to the Code, which established a "withholding agent" as "any person required to withhold, collect, and pay the tax under section 466 [providing for the withholding of income tax from wages]." Under § 467(a), the "tax required to be withheld by section 466 shall be collected by the person having control of the payment of such wages by deducting such amount from wages as and when paid." The "withholding agent" introduced by the Revenue Act of 1942 was the precursor to the statutory employer: an entity other than the common law employer that had the responsibility of withholding, collecting, and paying employment taxes.

### c. Current Tax Payment Act of 1943

One year later, the Current Tax Payment Act of 1943 ("1943 Act"), ch. 120, 57 Stat. 126, replaced the "withholding agent" with an additional definition of "employer," akin to the definition provided in the current I.R.C. § 3401(d)(1). Through the 1943 Act, § 1621(d) of the 1939 Code provided the following definition of the term "employer," together with an exception:

> The person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that (1) if the person for whom the individual performs or performed the service does not have control of the payment of the wages for such services, the term "employer" (except for the purposes of subsection (a) [defining "wages"]) means the person having control of the payment of such wages ....

1943 Act, § 2, 57 Stat. at 127.

The government highlights the rationale Congress used in replacing the term "withholding agent" with an additional definition of the term "employer:"

> Section 465(c) and (e) of the code contain definitions of the terms "withholding agent" and "employer," respectively. Under the House bill and under the bill as

passed by the Senate, the definition of withholding agent has been eliminated. Both bills generally define the term "employer" to mean the person for whom an individual performs, or performed any service, of whatever nature, as the employee of such person. This general definition is not adequate, however, to cover certain special cases, such as the ... case of the person making payment of wages in situations where the wage payments are not under the control of the person for whom the services are or were performed, as, for instance, in the case of certain types of pension payments. The House bill provided for these cases by an exception to the general definition of the term "employer" which provided that if the wages are paid by a person other than the person for whom the services are or were performed, the term "employer" means the person paying such wages. The Senate has restated the exception in order to make clear that it is designed solely to meet unusual situations and is not intended as a departure from the basic purpose to centralize responsibility for withholding, returning, and paying the tax and furnishing receipts. Def. Mot. Part. Summ. Judg. at 26–27 (quoting H.R. Conf. Rep. No. 78–510, at 30–31 (1943)).

The government argues that the changes the Revenue Act of 1942 and the Current Tax Payment Act of 1943 made to the definition of "employer" altered how revenue from employment taxes was to be collected, but they did not alter how the amount of such revenue was to be calculated. That amount, the government contends, was still calculated in accordance with the definition of wages, that is, "remuneration ... for services performed by an employee for his employer[.]" I.R.C. § 465(b) (1939); *See* Def. Mot. Part. Summ. Judg. at 27.

### d. Social Security Act, 1939 and 1946 Amendments

Plaintiffs view the development of the law differently. They assert that Congress intended to shift from a common law employer definition to a statutory employer definition for purposes of calculating FICA and FUTA wage bases—not just for identifying who had responsibility for withholding, reporting and paying the taxes. Pl. Mot. Summ. Judg. at 22.

Plaintiffs concede that "[a]s originally constructed [in the 1935 Social Security Act], the touchstone for the imposition of FICA and FUTA taxes and for the calculation of the wage base was the performance of services for the common law employer and not the wages paid by the employer." Pl. Mot. Summ. Judg. at 22.

Plaintiffs assert, however, that this understanding of "employer" was changed in 1939, "when Congress imposed FICA and FUTA taxes on wages paid by the employer, rather than on wages earned." Pl. Mot. Summ. Judg. at 22 (citing *Cleveland Indians*, 532 U.S. at 209–10, 121 S.Ct. 1433 (discussing the statutory history of the FICA and FUTA "wages paid by the employer" rule); S.Rep. No. 76–734, at 70–71, 75–76 (1939); H.R.Rep. No. 76–728, at 57–58 (1939)). Plaintiffs assert that this introduced a dichotomy into the employment tax regime in which FICA and FUTA taxes were imposed on wages paid by the employer, but the wage base was still calculated with reference to wages earned. See *id.* at 22.

Plaintiffs argue that Congress corrected the dichotomy in 1946 "by amending FICA and FUTA so that the wage base calculation was made using the same 'wages paid by the employer' standard used to impose FICA and FUTA." Pl. Mot. Summ. Judg. at 23 (citing Social Security Act Amendments of 1946 ("1946 Amendments")), ch. 951, §§ 412, 414, 60 Stat. 989–91 (1946) (currently codified at I.R.C. §§ 3121(a), 3306(b)(1)).

The language of Section 412(a) reads: [10]

Section 1426(a)(1) of the Federal Insurance Contributions Act is amended to read as follows:

(1) That part of the remuneration which, after remuneration equal to $3,000 has been paid to an individual by an employer with respect to employment during any

---

10. The language of § 412(b) is identical, amending the definition of "wages" for the Federal Unemployment Tax Act (I.R.C.1939, § 1607(b)(1)).

calendar year, is paid, prior to January 1, 1947, to such individual by such employer with respect to employment during such calendar year; or that part of the remuneration which, after remuneration equal to $3,000 with respect to employment after 1936 has been paid to an individual by an employer during any calendar year after 1946, is paid to such individual by such employer during such calendar year . . . .

1946 Amendments § 412, 60 Stat. at 989.

The language of Section 414(a) reads:

[S]ection 209(a) of the Social Security Act, as amended . . . is amended to read as follows:

(a) The term 'wages' means all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash; except that such term shall not include–

(1) That part of the remuneration which, after remuneration equals to $3,000 has been paid to an individual by an employer with respect to employment during any calendar year prior to 1940, is paid, prior to January 1, 1947, to such individual by such employer with respect to employment during such calendar year;

(2) That part of the remuneration which, after remuneration equal to $3,000 has been paid to an individual with respect to employment during any calendar year after 1939, is paid to such individual, prior to January 1, 1947, with respect to employment during such calendar year;

(3) That part of the remuneration which, after remuneration equal to $3,000 with respect to employment has been paid to an individual during any calendar year after 1946, is paid to such individual during such calendar year;

1946 Amendments, § 414, 60 Stat. at 90–91.

Plaintiffs assert on the basis of these amendments that Congress made its intent clear when it determined that FICA and FUTA wage bases should be calculated with reference to wages paid by the employer. *See* Pl. Mot. Summ. Judg. at 23 (quoting S.Rep. No. 79–1862, at 36 (1946) ("the employer, employee, and those administering the taxes may, beginning with calendar year 1947, look only to the amount of remuneration paid by the employer to the employee during the calendar year")). Plaintiffs, therefore, argue that FICA and FUTA taxes since 1947 have been calculated with reference to wages paid by the employer.

Along with legislative history, plaintiffs cite the Supreme Court's analysis of the FICA and FUTA amendments in Cleveland Indians. Plaintiffs argue that Cleveland Indians bolsters their claim that the amendments were intended to shift focus from the common law employer to the statutory employer for the purpose of calculating FICA and FUTA wage bases. "The Court also noted that, in making the imposition of FICA and FUTA taxes and the calculation of the FICA and FUTA wage bases consistent, 'Congress . . . used identical "wages paid" language[.]'" Pl. Mot. Summ. Judg. at 23 (quoting *Cleveland Indians*, 532 U.S. at 215, 121 S.Ct. 1433).

The 1939 and 1946 Amendments, however, are not related to the issue at bar. Regarding the 1939 Amendments to the Social Security Act, the wage base provision of FICA, now set forth in I.R.C. § 3121(a)(1), is derived from § 811(a) of the 1935 Act, and, as the government notes, "the basic terms [of the wage base provision] remain essentially unchanged" since passage of the 1935 Act. Def. Mot. Part. Summ. Judg. at 23. The original enactment of FUTA did not contain a wage cap. The cap was added by the 1939 Amendments, establishing § 1607(b)(1) of the Internal Revenue Code of 1939 (the predecessor of I.R.C. § 3306(b)(1)). See *id.* at 23.

The 1946 Amendments also fail to support plaintiffs' contentions. Section § 412 made technical changes to the FICA and FUTA wage base provisions (then codified at §§ 1426(a)(1) and 1607(b)(1) of the 1939 Code) that were intended to address a timing question. As will be discussed, the 1946 Amendments were significant for the issue in *Cleveland Indians*, but, as the government contends, "have no discernable impact on the issue presently before the Court in the instant proceeding." Def. Opp. at 9.

Cleveland Indians does not support plaintiffs' statutory argument. Cleveland Indians dealt with the calculation of FICA and

FUTA wage bases, but in the context of the circumstances when statutory employers were to be considered to have paid wages to the employees, not the amount of the wages. See *Cleveland Indians*, 532 U.S. at 203, 121 S.Ct. 1433 ("This case concerns the application of FICA and FUTA taxes to payments of back wages .... The question presented is whether ... payments [from plaintiff to employees], characterized as back wages, should be taxed by reference to the year they were actually paid (1994), as the Government urges, or by reference to the years they should have been paid (1986 and 1987), as the Company and its supporting amicus, the Major League Baseball Players Association, contend.").

The Court held that FICA and FUTA wage bases were to be calculated based on the year in which they were actually paid. *Cleveland Indians*, 532 U.S. at 220, 121 S.Ct. 1433. In arriving at its decision, the Court looked to the FICA, FUTA and income tax withholding provisions that are at issue in this case and reviewed their legislative history to discern Congress's intent in enacting the 1939 and 1946 Amendments. "[T]he Government observes that Congress chose the words in the current statute specifically to replace language in the original 1935 Social Security Act providing that FICA and FUTA tax rates applied to wages paid or received 'with respect to employment during the calendar year.'" *Id.* at 209, 121 S.Ct. 1433 (citing the 1935 Act, §§ 801, 804, 901, 49 Stat. 636–637, 639). "The Treasury Department had interpreted this 1935 language to mean that wages are taxed at 'the rate in effect at the time of the performance of the services for which the wages were paid.'" *Id.* at 209, 121 S.Ct. 1433 (citing Treas. Regs. 91, Arts. 202, 302 (1936)). "In 1939, Congress amended the 1935 Act to provide that FICA and FUTA tax rates would no longer apply on the basis of when services were performed, but would instead apply 'with respect to wages paid during the calendar yea[r].'" *Id.* at 209, 121 S.Ct. 1433 (citing the 1939 Amendments, §§ 604, 608, 53 Stat. 1383, 1387). This 1939 language remains essentially unchanged in the current FICA and FUTA tax provisions, I.R.C. §§ 3111(a) and 3301. *Id.* at 209, 121 S.Ct. 1433.

The Supreme Court in *Cleveland Indians*, referring to the same Senate and House of Representatives reports cited by plaintiffs, discussed in detail Congress's intent in amending the FICA and FUTA provisions in 1939. *See* Pl. Mot. Summ. Judg. at 22–23.

"The 1939 Amendments adopting the 'wages paid' rule for taxation reflected Congress's worry that, as tax rates increase from year to year, 'difficulties and confusion' would attend the taxation of wages payable in one year, but not actually paid until another year." *Cleveland Indians*, 532 U.S. at 214, 121 S.Ct. 1433 (quoting S.Rep. No. 734, 76th Cong., 1st Sess., 75–76; citing H.R.Rep. No. 728, 76th Cong., 1st Sess., 57–58). "Congress understood that an employee's annual compensation may be 'based on a percentage of profits, or on future royalties, the amount of which cannot be determined until long after the close of the year.'" *Id.* at 214, 121 S.Ct. 1433 (quoting S.Rep. No. 734, 76th Cong., 1st Sess., at 75). "Requiring employers to 'estimate unascertained amounts and pay taxes and contributions on that basis' would 'cause a burden on employers and administrative authorities alike.'" *Id.* at 214, 121 S.Ct. 1433 (quoting S.Rep. No. 734, 76th Cong., 1st Sess., at 75–76). "Congress correctly anticipated that '[t]he placing of [FICA and FUTA] tax[es] on the "wages paid" basis [would] relieve this situation.'" *Id.* at 214, 121 S.Ct. 1433 (quoting S.Rep. No. 734, 76th Cong., 1st Sess., at 75). " 'Under the amendment the rate applicable would be the rate in effect at the time that the wages are paid and received without reference to the rate which was in effect at the time the services were performed.'" *Id.* at 214, 121 S.Ct. 1433 (quoting H.R.Rep. No. 728, 76th Cong., 1st Sess., at 58).

With respect to the 1946 Amendments, the Supreme Court noted, "Prior to 1946, the FICA and FUTA wage bases had been defined in terms of remuneration 'paid ... with respect to employment during' a given year." *Cleveland Indians*, 532 U.S. at 214, 121 S.Ct. 1433 (citing the 1935 Act, § 811(a), 49 Stat. at 639 (FICA); 1939 Amendments, § 606, 53 Stat. at 1383 (FUTA)).

"Paralleling the 1939 Amendments to the tax rate provisions, Congress in 1946 established the current 'wages paid' rule for identifying the wages that compose the FICA and FUTA wage bases in a given year." *Cleveland Indians,* 532 U.S. at 214, 121 S.Ct. 1433 (citing the 1946 Amendments §§ 412, 414, 60 Stat. 989–991 (codified at I.R.C. §§ 3121(a), 3306(b)(1))). "The Committee Reports make clear that Congress's purpose in amending the FICA and FUTA wage bases was to define the 'yardstick' for measuring 'wages' as *the amount paid during the calendar year . . ., without regard to the year in which the employment occurred.'* " *Id.* at 215, 121 S.Ct. 1433 (quoting S.Rep. No. 1862, 79th Cong., 2d Sess., 36 (1946); H.R.Rep. No. 2447, 79th Cong., 2d Sess., 35 (1946) (emphasis added by the Supreme Court)).

The Supreme Court's review of the legislative history of the 1939 and 1946 Amendments to FICA and FUTA shows that Congress was concerned with *when* wages were to be considered to have been paid, not with *who* was considered to have paid the wages. Congress changed the language of the statute to address timing issues, not to identify the employer considered to have paid the employees for purposes of calculating the FICA and FUTA wage bases.

e. Revenue rulings on the calculation of wages with respect to services provided for a common law employer

The government argues that the administrative rulings of the IRS from 1937—1969

have been correct and consistent interpretations of the Internal Revenue Code. In light of that fact, and because the statutory language of the employment tax provisions has, in relevant part, remained unchanged, the rulings are to be accorded substantial deference. "Treasury regulations and interpretations long-continued without substantial change applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *Cleveland Indians,* 532 U.S. at 220, 121 S.Ct. 1433; *Cottage Savings,* 499 U.S. at 561, 111 S.Ct. 1503; *Correll,* 389 U.S. at 305–06, 88 S.Ct. 445; *Zenith,* 562 F.2d at 1219–20.[11]

i. S.S.T. 154, 1937–1 C.B. 391

Two years after Titles VIII and IX of the 1935 Social Security Act were passed, the IRS issued S.S.T. 154,[12] a ruling based on a fact pattern in which an employee performed services exclusively for a corporate subsidiary, but was actually paid by the corporate parent. The ruling concluded that "[i]n determining liability for the taxes imposed under Titles VIII and IX of the Social Security Act, the subsidiary for which the services are performed is considered the employer." The government contends that this is the earliest authoritative administrative pronouncement relevant to the issue. *See* Def. Mot. Part. Summ. Judg. at 29.

The ruling reflects the understanding early on that common law employers were regard-

**11.** The government argues that the individual published rulings themselves are entitled to deference under *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ("We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). *See* Def. Mot. Part. Summ. Judg. at 28 n. 23. It is not clear whether revenue rulings are entitled to the level of deference given administrative interpretations of statutes under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Fannie Mae,* 2004 U.S.App. LEXIS 16588, at *10 (citing *Am. Mut. Life Ins. Co. v. United States,* 267 F.3d 1344, 1352–53 n. 3 (Fed.Cir.2001)). After *United States v. Mead Corp.,* 533 U.S. 218,

121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), revenue rulings, at the least, " 'may merit some deference whatever its form, given the "specialized experience and broader investigations and information" available to the agency.' " *Fannie Mae,* 2004 U.S.App. LEXIS 16588, at *12 (quoting *Mead,* 533 U.S. at 234, 121 S.Ct. 2164) (quoting *Skidmore,* 323 U.S. at 139, 65 S.Ct. 161). The government argues persuasively that "the long-standing administrative practice interpreting the statues in issue herein, as reflected by the cited revenue rulings, is itself entitled to considerable deference under *Zenith.*" Def. Mot. Part. Summ. Judg. at 28 n. 23.

**12.** S.S.T.s were Treasury rulings regarding Social Security taxes. They were similar in force and effect to revenue rulings issued under current IRS procedures. See Def. Mot. Part. Summ. Judg. at 29 n. 24.

ed as the employers for purposes of calculating employment taxes, "irrespective of whether a third party controlled the payment of the remuneration with respect thereto." Def. Mot. Part. Summ. Judg. at 29. The ruling reflects the opinion of the IRS on the issue raised by the facts of this case. In such a situation, the employer for whom an employee provides services is to be considered the employer for purposes of calculating employment tax liability, regardless of which entity actually pays the employee.

S.S.T. 154 is "a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new." *Zenith*, 437 U.S. at 450, 98 S.Ct. 2441 (quoting *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933)). Thus, the Court gives S.S.T. 154 "particular weight" in interpreting the statutes at issue. *Id.*

    ii.   Rev. Rul. 54–471, 1954–2 C.B. 348

After income tax withholding provisions were added to the Code by the Revenue Act of 1942, the IRS issued Rev. Rul. 54–471, maintaining the common law employer as the necessary referent for calculating employment tax liabilities. *See* Def. Mot. Part. Summ. Judg. at 30. In that ruling, the IRS reviewed the case of individuals ("demonstrators") who demonstrated citrus products on behalf of a state citrus commission. The demonstrators were paid by an advertising agency, which was reimbursed by the state commission for the amounts paid out.

The IRS held that "the State citrus commission exercised such control over the demonstrators in the performance of their services as is necessary to establish the relationship of employer and employee for FICA and FUTA purposes. The fact that in some instances the agency selected and engaged the demonstrators on behalf of the commission does not negative the existence of an employer-employee relationship between the commission and the demonstrators." Rev. Rul. 54–471, 1954–2 C.B. 348, 1954 WL 8514.

As a result, the IRS concluded that "although a common law relationship of employer and employee existed between the State citrus commission and the demonstrators, for FICA and FUTA purposes, the demonstration services performed for the commission, an instrumentality wholly owned by the State, are excepted from 'employment,' ... and liability for the taxes imposed by the Acts is not incurred by the commission." Rev. Rul. 54–471, 1954–2 C.B. 348 (citing § 1426(b) of FICA and § 1607(c) of FUTA, provisions that excepted from the term "employment" services performed for a State or one of its political subdivisions). Therefore, even though the demonstrators were actually paid by the advertising agency, a private, non-political entity which paid wages subject to taxation, the FICA and FUTA wage base calculations were based on the demonstrators' employment relationship with the commission and, therefore, no tax was owed.

The commission's status as common law employer notwithstanding, the IRS further held that "the remuneration of the demonstrators for services performed in demonstrating the products of the commission constitute 'wages' for purposes of the income tax withholding." The IRS based its holding on paragraph (1), § 1621(d) of the Internal Revenue Code of 1939, which mirrors § 3401(d)(1) of the current Code. Section 1621(d)(1) stated: "[I]f the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' ... means the person having control of the payment of such wages ...." Therefore, even though the advertising agency was the employer for purposes of withholding federal income taxes, the commission was considered the demonstrators' employer for purposes of calculating FICA and FUTA wage bases.

Rev. Rul. 54–471 constitutes a construction of FICA and FUTA consistent with the IRS's interpretation of Titles VIII and IX of the 1935 Social Security Act.

    iii.   Rev. Rul. 57–145, 1957–1 C.B. 332

The IRS in Rev. Rul. 57–145 ruled that a corporation was for FICA and FUTA purposes the employer of "clerks of the works"

who were individuals engaged by the corporation to inspect a construction project being completed on its behalf. Though the clerks received their wages from an architectural firm that the corporation reimbursed, the clerks were engaged by the corporation, performed their tasks at its direction, and could be terminated by the corporation for cause at any time. The IRS ruled "the fact that [the clerk's] salaries are actually paid to them by the architectural firm is immaterial, since their remuneration may properly be ascribed to the corporation." Again, because the architectural firm had control of payment of wages to the clerks, the firm was responsible for withholding Federal income tax from their wages. But the employment taxes were based on wages received in return for services for the corporation.

As the government noted, "by 1957 it had been established by administrative precedent that wages, the payment of which is controlled by third parties within the meaning of the income tax withholding statute, are deemed paid by the common-law employer for purposes of determining FICA and FUTA tax liabilities." Def. Mot. Part. Summ. Judg. at 30.

iv. Rev. Rul. 69–316, 1969–1 C.B. 263

The IRS reaffirmed the views it espoused in S.S.T. 154 in Rev. Rul. 69–316, 1969 WL 19351 ("The purpose of this Revenue Ruling is to update and restate, under the current statute and regulations, the position set forth in S.S.T. 154, C.B.1937–1 391."). The ruling stated what has remained the unchanged interpretation of the IRS with respect to the significance of I.R.C. § 3401(d) on the calculation of FICA and FUTA wage bases:

> However, section 3401(d) of the Code, in defining the term "employer" for purposes of income tax withholding, provides in part that: (1) If the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" ... means the person having control of the payment of such wages, .... Thus, when Y has control of the payment of wages for services performed by an employee of a subsidiary, Y is the "employer" of that employee for purposes of in-

come tax withholding even though the subsidiary is the employer with respect to the wages for purposes of the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.

Rev. Rul. 69–316.

Plaintiffs argue that the 1939 and 1946 amendments to the Social Security Act established the statutory employer as the employer for purposes of calculating FICA and FUTA wage bases. The foregoing revenue rulings illustrate, however, that the IRS consistently interpreted FICA and FUTA as providing that, for purposes of calculating wage bases, the common law employer was to be considered the employer, regardless of which entity actually paid the employee's wages.

#### f. Treasury Regulations

Plaintiffs contend that the Treasury Regulations, too, establish that the IRS refers to the statutory employer for purposes of calculating FICA and FUTA wage bases. "In both the statute and the Regulations, payment of wages by the statutory employer triggers the imposition, timing, and calculation of tax." Pl. Mot. Summ. Judg. at 25.

i. Treas. Reg. § 31.3121(a)(1)–1(a)(3), governing the FICA wage base

Plaintiffs argue that the Treasury Regulation governing the FICA wage base precludes aggregation of wages for purposes of computing the FICA wage base only where "the employee receives remuneration from more than one employer ...." Treas. Reg. § 31.3121(a)(1)–1(a)(3). Because plaintiffs believe that they were the only employers who paid wages to the PWEs, they reason there is nothing in the Treasury Regulations barring them from aggregating the PWEs' wages for FICA wage base purposes.

Treas. Reg. § 31.3121(a)(1)–1(a)(3), however, expressly bars plaintiffs from aggregating wages in this situation. The regulation establishes that the "annual wage limitation [which is the FICA wage base] does not apply to the aggregate remuneration received from all employers, but instead applies to the remuneration received ... from each employer with respect to employment

.... In such case the first remuneration received in any calendar year after 1974 up to the amount equal to the contribution and benefit base ... from each employer constitutes wages and is subject to the taxes ...." Treas. Reg. § 31.3121(a)(1)–1(a)(3).

Just like the Code provisions governing the FICA wage base, the Treasury Regulations establish that plaintiffs were neither employers nor did they pay wages to the employees for purposes of computing the FICA wage base. Because Treas. Reg. § 31.3121(a)(1)–1(a)(3) establishes that all of the remuneration disbursed by plaintiffs is deemed to be paid by the common law employers for whom services were performed plaintiffs are expressly precluded from aggregating the wages paid to the PWEs.

> ii. Treas. Reg. § 31.3306(b)–1(a)(3), governing the FUTA wage base

Plaintiffs claim that, like the FICA regulation, the Treasury Regulation governing the FUTA wage base precludes aggregation of wages for purposes of computing the FUTA wage base only where "an employee is paid remuneration by more than one employer ...." Treas. Reg. § 31.3306(b)–1(a)(3). Again, because plaintiffs believe that they were the only employers who paid wages to the PWEs, they reason there is nothing in the Treasury Regulations barring them from aggregating the PWEs' wages for FUTA wage base purposes.

The Treasury Regulations, however, specifically bar plaintiffs from aggregating wages when computing the FUTA wage base. Under Treas. Reg. § 31.3306(b)–1(a)(3), the "limitation of wages [which is the FUTA wage base] ... applies, not to the aggregate remuneration paid by all employers ... but instead to the remuneration paid ... by each employer with respect to employment .... In such case, the first $3,000 [13] paid during the calendar year by each employer constitutes wages and is subject to tax." Treas. Reg. § 31.3306(b)–1(a)(3).

As with the Treasury Regulations governing the FICA wage base, plaintiffs were neither employers nor did they pay wages to the employees for purposes of computing the FUTA wage base. Because Treas. Reg. § 31.3306(b)–1(a)(3) establishes that all of the remuneration disbursed by plaintiffs is deemed to be paid by the common law employers for whom services were performed, plaintiffs are expressly precluded from aggregating the wages paid to the PWEs.

> iii. Treas. Regs. §§ 31.3121(a)–2(a), 31.3101–3, 31.3111–3 governing when FICA wages are paid and received, and when FICA employee and employer taxes attach

Plaintiffs argue that there are Treasury Regulations establishing that FICA and FUTA taxes are imposed and calculated with reference to wages paid by an employer and not with reference to services provided to an employer.

Plaintiffs argue that Treas. Reg. § 31.3121(a)–2(a) establishes that "wages are received by an employee at the time that they are paid by the employer to the employee." Plaintiffs argue that this is a definition of "wages" that establishes that plaintiffs are the employers for FICA wage base purposes.

Treas. Reg. § 31.3121(a)–2(a), however, governs only when wages are considered to be paid. The regulation does not establish how the FICA wage base is to be calculated. Treas. Reg. § 31.3121(a)–2(a), therefore, does not support plaintiffs' argument that they are to be considered employers for purposes of calculating the FICA wage base.

Plaintiffs argue that under Treas. Reg. § 31.3101–3, the FICA employee tax attaches "at the time that the wages are received by the employee." Similarly, under Treas. Reg. § 31.3111–3, the FICA employer tax attaches "at the time that the wages are paid by the employer." These regulations, however, only govern the question of timing as it relates to the calculation of FICA taxes. Treas. Reg. §§ 31.3101–3 and 31.3111–3 govern when FICA taxes attach, but they do

---

**13.** This regulation does not yet reflect the current FUTA wage base of $7,000, as specified by I.R.C. § 3306(b)(1).

not affect how wages are to be calculated for FICA and FUTA tax purposes.

### iv. Treas. Reg. § 31.3301–2, governing the measure of FUTA tax

Finally, plaintiffs argue that under FUTA "[t]he tax for any calendar year is measured by the amount of wages paid by the employer during such year." Treas. Reg. § 31.3301–2. This regulation does not govern who is to be considered the employer for purposes of computing the FUTA wage base. Treas. Reg. § 31.3301–2 instead establishes the period of time for which the FUTA wage base is to be calculated.

### v. Treasury Regulations are accorded deference

These Treasury Regulations should be accorded deference as if they had "received congressional approval and have the effect of law" because they were " 'long continued without substantial change, applying to unamended or substantially reenacted statutes.' " *Cleveland Indians*, 532 U.S. at 220, 121 S.Ct. 1433 (quoting *Cottage Savings*, 499 U.S. at 561, 111 S.Ct. 1503). When it appears that Congress has sought to provide tax provisions that are both fair and efficiently administrable, the Court defers " 'to the Commissioner's regulations as long as they implement the congressional mandate in some reasonable manner.' " *Cleveland Indians*, 532 U.S. at 219, 121 S.Ct. 1433 (quoting *Correll*, 389 U.S. at 307, 88 S.Ct. 445). " 'Congress has delegated to the [Commissioner], not to the courts, the task of prescribing all needful rules and regulations for the enforcement of the Internal Revenue Code.' " *Cleveland Indians*, 532 U.S. at 219, 121 S.Ct. 1433 (alteration in original) (quoting *National Muffler Dealers Assn., Inc. v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979)). This delegation " 'helps guarantee that the rules will be written by "masters of the subject" . . . who will be responsible for putting the rules into effect.' " *Cleveland Indians*, 532 U.S. at 219, 121 S.Ct. 1433 (quoting *National Muffler Dealers*, 440 U.S. at 477, 99 S.Ct. 1304) (quoting *United States v. Moore*, 95 U.S. 760, 763, 24 L.Ed. 588 (1878)).

As explained by the Supreme Court itself in *Cleveland Indians*, the regulations that plaintiffs and defendant cite were originally adopted in 1940. Treas. Regs. §§ 31.3121(a)(1)–1 and 31.3306(b)–1 were originally adopted as Treas. Reg. 106, § 402.228 and Treas. Reg. 107, § 403.228 with respect to FICA and FUTA as codified in the Internal Revenue Code in 1939. Def. Opp. at 11. The language of the 1940 FICA regulation defining wages in terms of services provided to a common law employer and the anti-aggregation rules is similar to the language of the current regulation:

> The term "wages" does not include that part of the remuneration paid by an employer to whom an employee for employment performed for him during any calendar year which exceeds the first $3,000 paid by such employer to such employee for employment performed during such calendar year.
>
> \*    \*    \*    \*    \*    \*
>
> If the employee has more than one employer during a calendar year, the limitation of wages to the first $3,000 of remuneration received applies, not to the aggregate remuneration received from all employers with respect to employment during that year, but instead to the remuneration received from *each* employer with respect to employment during that year.

Treas. Reg. 106, § 402.228 (1940).

The current sections of the regulations at issue were adopted in reference to the Internal Revenue Code of 1954, and were republished in 1960. *See* T.D. 6516, 25 F.R. 13031 (1960). Since that time, the IRS has consistently maintained and interpreted these and the accompanying FICA and FUTA regulations. "The Internal Revenue Service has long maintained regulations interpreting the FICA and FUTA tax provisions . . . . [T]hese regulations have continued unchanged in their basic substance since 1940." *Cleveland Indians*, 532 U.S. at 219, 121 S.Ct. 1433.

Similar to the deference accorded revenue rulings, " '[a] regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent.' " *Cleveland Indians*, 532 U.S. at

219, 121 S.Ct. 1433 (quoting *National Muffler Dealers,* 440 U.S. at 477, 99 S.Ct. 1304). The Treasury Regulations discussed above constituted substantially contemporaneous constructions of the statutes they interpreted. They are entitled to substantial deference in determining that the Production Companies should be considered to have paid the PWEs for purposes of calculating the PWEs' FICA and FUTA wage bases. Indeed, in the language of *Cleveland Indians,* they "are deemed to have received congressional approval and have the effect of law." 532 U.S. at 220, 121 S.Ct. 1433 (quoting *Cottage Savings,* 499 U.S. at 561, 111 S.Ct. 1503 (citing *Correll,* 389 U.S. at 305–06, 88 S.Ct. 445)).

### g. Employment Security Amendments of 1970

Plaintiffs note that unlike FICA, FUTA provides a definition of the term "employer" at I.R.C. § 3306(a). Section 3306(a)(1) defines an employer as "any person who (A) during any calendar quarter in the calendar year or the preceding calendar year paid wages of $1,500 or more, or (B) on each of some 20 days during the calendar year or during the preceding calendar year, each day being in a different calendar week, employed at least one individual in employment for some portion of the day." Plaintiffs argue that because they actually paid wages to the PWEs, they fit within the definition of "employer" for purposes of FUTA.

Given the language of I.R.C. § 3306(a), plaintiffs argue "if the common law employer does not make the payment of wages to the employee, it is the statutory employer that is liable for the FUTA taxes relating to such employee—not the common law employer." See Pl. Mot. Summ. Judg. at 15 (citing *Consolidated Flooring Services v. United States,* 42 Fed.Cl. 878, 879 (1999) ("*Consolidated Flooring II*") (holding that statutory employers "are liable for . . . paying FUTA taxes")).

Plaintiffs base their I.R.C. § 3306(a) argument on the rationale that, because statutory employers like themselves are liable for paying employment taxes (when they, and not

the common law employers, pay wages to the employees), they should be considered the PWEs' employers for purposes of calculating the FUTA wage base. Section 3306(a) was enacted as part of the Employment Security Amendments of 1970, Pub.L. No. 91–373, 84 Stat. 695 ("1970 Amendments"). A review of the 1970 Amendments shows that § 3306(a) was not intended to define the term "employer" for the purposes of calculating the FUTA wage base, but rather it was meant to narrow the scope of the "small employer" exception to the FUTA definition of "employer."

Through 1969, the term "employer" for FUTA purposes had been defined solely in terms of the number of persons in the employ of the employer for a certain period of time. *See* Def. Mot. Part. Summ. Judg. at 33 (citing the Social Security Act of 1935, § 907(a), ch. 531, 49 Stat. 620. 642 (1935); I.R.C.1939, § 1607(a); I.R.C.1954, § 3306(a)). The definition was amended by § 101(a) of the 1970 Amendments. Section 101(a) reduced the minimum number of employees required for an employer to fit the FUTA definition of "employer" from four to one. *See* § 101(a)(2), 84 Stat. at 696. Section 101(a) also added an alternate definition of employer based on the amount of "wages" paid. This alternate definition, the original enactment of I.R.C. § 3306(a)(1)(A), provided that the term "employer," with respect to any calendar year, can include a party that pays wages of $1,500 or more during any calendar quarter in the calendar year or the preceding calendar year. See 1970 Amendments § 101(a)(2), 84 Stat. at 696. The legislative history of the 1970 Amendments shows that Congress intended I.R.C. § 3306(a) to narrow the scope of the "small employer" exception to the FUTA definition of employer so as to ensure more employees would be covered by FUTA. See Def. Mot. Part. Summ. Judg. at 33–35.

H.R. Rep. No 91–612 addressed this precise objective:

> The alternative test in the new definition of "employer"—one having a payroll in any quarter of $800 [14]—is intended to insure

---

14. The $800 minimum quarterly payroll was later increased to $1,500 by the Conference Committee. *See* Def. Mot. Part. Summ. Judg. at 34 n. 28.

coverage of significant operations conducted in fewer than 20 weeks in any one calendar year. An example of such operation would be that of a contracting firm organized to do a particular job employing many workers but completing the job in a short period. The employees of such a firm now receive no unemployment compensation wage credits while employed by these firms. Under present law, it is possible for workers to receive no credit for unemployment compensation purposes, and for the employer to avoid that tax, for a large-scale operation that lasts as much as 38 weeks over 2 calendar years.

H.R.Rep. No. 91–612, at 9 (1969).

Congress did not intend to replace the common law employer for whom services were provided in the calculation of the FUTA wage base. Congress intended only to narrow the small employer provision that some employers, in an effort to avoid paying FUTA taxes, were exploiting at the expense of their employees' employment security. Therefore, I.R.C. § 3306(a)(1) does not support plaintiffs' argument that the FUTA wage base should be calculated based on wages paid by the statutory employer instead of wages attributable to work performed for common law employers.

### 2. Otte and Its Progeny Do Not Affect the Calculation of FICA and FUTA Wage Bases

The parties' arguments turn on the definition of the term "employer" in I.R.C. § 3401(d), which defines the term "employer" for purposes of Chapter 24 of the Internal Revenue Code, governing the withholding of income tax from wages.

As detailed previously, plaintiffs contend that I.R.C. § 3401(d)(1) provides an exception to the general definition of employer as "the person for whom an individual performs or performed any service . . . ." The exception specifies that if "the person for whom the individual performs . . . services does not have control of the payment of wages for such services, the term 'employer' . . . means the person having control of the payment of such wages." I.R.C. § 3401(d)(1). Based on that reading of the statute, plaintiffs, because

they have control of the payment of wages to the PWEs, are to be considered the employers responsible for withholding income taxes from the PWEs' salaries under I.R.C. § 3402(a)(1). This reading of the statute provides the foundation for the next steps in plaintiffs' argument, culminating in the contention that they are to be considered the employers that paid the PWEs' wages for purposes of calculating FICA and FUTA wage bases. In the next steps, plaintiffs argue the courts have incorporated the I.R.C. § 3401(d) definition of "employer" into FICA and FUTA. That is true. But that does not alter the calculation of wage bases.

### a. Otte v. United States

In 1974, the Supreme Court decided *Otte v. United States*, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212. In *Otte*, the trustee of a bankrupt corporation argued that he did not have to withhold and pay FICA taxes on wages he paid to the corporation's employees. The trustee argued that he was not the employer; he merely paid wages to the employees, and no statutory basis existed for him to be considered the employer for FICA purposes. The Court held that the definition of the term "employer" could be applied identically with respect to both income tax withholding and the requirement to withhold employees' portions of FICA taxes. "The fact that the FICA withholding provisions of the Code do not define 'employer' is of no significance, for that term is not to be given a narrower construction for FICA withholding than for income tax withholding." *Otte*, 419 U.S. at 51, 95 S.Ct. 247.

The result of this holding was that the I.R.C. § 3401(d) definition of employer was incorporated into FICA, as well as the § 3401(d)(1) exception. Therefore, an employer having control over the payment of wages to an employee—even if the employee performed services solely for another party—was responsible for withholding the employee's FICA taxes along with his federal income taxes.

Plaintiffs contend that " 'Congress . . . intended to coordinate the income-tax withholding system with FICA and FUTA. In both instances, Congress did so to promote

simplicity and ease of administration.'" Pl. Mot. Summ. Judg. at 18 (quoting *Rowan*, 452 U.S. at 257, 101 S.Ct. 2288). To that end, plaintiffs reason, it makes sense that the employer paying wages be considered the employer for purposes of calculating FICA and FUTA wage bases. Plaintiffs base that argument on the fact that "'[n]o one other than the person who has control of the payment of the wages is in a position to make the proper accounting and payment to the United States.'" Pl. Mot. Summ. Judg. at 18 (quoting *In re Southwest Restaurant Systems, Inc.*, 607 F.2d 1237, 1240 (9th Cir. 1979)).

The trustee in *Otte* made a similar argument. He claimed that having to withhold, pay, and report income taxes would take time and money away from the expeditious settlement of the bankrupt estate. The trustee also argued that calculating the amount of taxes to withhold, pay and report deprived the estate of time and resources. The Court spoke to the issue of the burden of calculating taxes. "We are not persuaded, however, that this burden would be so undue as to be inconsistent with or violative of the spirit of the [Bankruptcy] Act. It is the same burden, no more and no less, than any employer of the same size must bear .... The burden is not disproportionate." *Otte*, 419 U.S. at 52, 95 S.Ct. 247.

The *Otte* Court's rationale applies equally to this case. It is true that plaintiffs, as the employers who pay the PWEs' wages, are best situated to properly account for and pay FICA and FUTA taxes to the government. But that does not mean that they must be considered the PWEs' employers for purposes of calculating the FICA and FUTA wage bases. Plaintiffs could just as easily consider the Production Companies the PWEs' employers for purposes of those calculations. After all, plaintiffs base their business on the expertise they have in calculating and administering payroll for production companies. *See* Joint Stip. of Facts at 6. They even pointed out that they calculated for the Production Companies in their invoices what the Production Companies' FICA and FUTA obligations would be if each individual Production Company were defined as

an "employer" for FICA and FUTA wage base calculation purposes. *See* Joint. Stip. of Facts at 7; Transcript of Proceedings, *Cencast Services, L.P., et al. v. United States*, Nos. 02–1916 T, 02–1917 T, 02–1918 T, 02–1919 T, 02–1920 T, 02–1921 T, 02–1922 T, 02–1923 T, 02–1924 T, 02–1925 T (consolidated), at 73 (Fed.Cl. Mar. 30, 2004) ("Tr."). Thus, though plaintiffs, instead of the Production Companies, paid wages to the PWEs, it makes no difference to the efficient administration of the FICA and FUTA tax collection regime whether the plaintiffs or the Production Companies are considered the "employers" for purposes of calculating FICA and FUTA wage bases.

After *Otte*, the Courts of Appeals in the Fourth, Sixth, Ninth, Tenth Circuits, and this Court held that it was the responsibility of the statutory employer to report, withhold, and pay FICA and FUTA taxes with respect to employees to whom it paid wages. The cases following *Otte* do not, however, support the contention that as a result, the statutory employer is to be considered to have paid the employees's wages for the purpose of calculating the employees' FICA and FUTA wage bases. Most of the cases plaintiffs cite do not even deal with the calculation of FICA and FUTA wage bases. Therefore, the cases following *Otte* do not support plaintiffs' claim.

### b. *In re Armadillo Corp.*

In *In re Armadillo Corp.*, 561 F.2d 1382 (10th Cir.1977), the Court of Appeals for the Tenth Circuit focused on the responsibility of trustees to pay the employer portion of FICA taxes and to pay FUTA taxes for two bankrupt companies. The court stated, "[T]he pivotal question on the issue of liability comes down to the degree to which a trustee is required to function as an employer in paying and withholding wage claim related taxes." 561 F.2d at 1385. Though the employees performed services for the bankrupt companies, the trustees controlled the payment of their wages. The court acknowledged that, after *Otte*, the trustees were responsible for withholding and paying the employees' portion of FICA taxes. Employing the same rationale as the Supreme Court in *Otte*, the *Armadillo* court held that

because the trustees controlled payment of the employees' wages, they were also liable for paying the employer portion of FICA taxes and for paying FUTA taxes. *Id.* at 1386.

The trustees in *Armadillo* argued that they were not liable for FICA or FUTA taxes because they were excise taxes on employers and an employment relationship did not exist between the trustees and the employees of the bankrupt corporations. Plaintiffs contend that the court stated that it was " 'without merit' to argue that only the common law employer is responsible for paying the employer portion of FICA and concluded that the statutory employer bears such responsibility." Pl. Mot. Summ. Judg. at 17 (citing *Armadillo*, 561 F.2d at 1386). According to plaintiffs, the rationale of *Otte* and *Armadillo* "has been uniformly accepted by the courts, including this Court." Pl. Mot. Summ. Judg. at 17 (citing *Winstead v. United States*, 109 F.3d 989 (4th Cir.1997); *In re Laub Baking Co.*, 642 F.2d 196, 198–199 (6th Cir.1981); *In re Southwest Restaurant Systems, Inc.*, 607 F.2d 1237, 1240 (9th Cir.1979); *Consolidated Flooring II*, 42 Fed.Cl. 878 (1999)). Therefore, both FICA and FUTA contemplate the possibility of two employers. Pl. Mot. Summ. Judg. at 17. That contention is not in dispute. The government stipulates to the fact that plaintiffs, because they controlled payment of wages to the PWEs, were responsible for paying and reporting the PWEs' FICA and FUTA taxes. See supra note 6. What *Otte, Armadillo,* and the subsequent cases fail to do, however, is address the issue of how the FICA and FUTA wage bases are to be calculated.

Plaintiffs contend that the Treasury Regulations and revenue rulings relied on by the government are outdated and contrary to the policy of centralizing at the point of control the responsibility for withholding, paying and reporting FICA and FUTA taxes in order to ensure a more efficient administration of revenue collection. The trustees in Armadillo made a similar argument, stating that requiring the trustees of a bankrupt employer to take the time and effort to withhold, pay and report FICA and FUTA taxes would add unnecessary time and effort to the process of quickly liquidating a bankrupt estate and thus run counter to the objectives of the Bankruptcy Act. The *Armadillo* court responded:

> We also do not see merit in trustees' assertions that ... the liability imposed relating to their declared withholding obligations do not justify the extra time and manpower needed in bankruptcy proceedings .... We believe that the contentions of the trustees are directed to the wrong branch of government. This was well expressed in Otte: "If relief is to be considered for bankrupt estates in this respect, it is a matter for legislative, not judicial, concern. There is nothing in the Act or in the Internal Revenue Code that relieves the trustee of these duties. ('tasks of withholding, reporting, returning, and remitting') ...."

*Armadillo*, 561 F.2d at 1386 (quoting *Otte*, 419 U.S. at 54, 95 S.Ct. 247).

The Armadillo court added that "[t]rustees have not directed our attention to any authority, statutory, regulatory, or otherwise, nor has our independent research disclosed a valid, viable argument for excusing trustees from their liability to withhold and pay the wage related taxes." 561 F.2d at 1386. "Under these circumstances, we do not opt to read into the relevant statutes that which is not clearly present, since to do so 'would involve judicial activism into a political, legislative and/or executive area.' " *Id.* (citing *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952)).

If plaintiffs' argument in this case is with the failure of Congress or the IRS to conform the Internal Revenue Code, Treasury Regulations, and revenue rulings to what they perceive to be a desirable policy of treating statutory employers as employers for the purpose of calculating FICA and FUTA wage bases, they should address their argument to the legislative branch.

### c.   In re Southwest Restaurant Systems, Inc.

The Ninth Circuit Court of Appeals in *In re Southwest Restaurant Systems, Inc.*, 607 F.2d 1237 (9th Cir.1979), faced a similar issue with a trustee of a bankrupt corporation that

had paid the wages of employees working for four different restaurants. The Southwest Restaurant court stated, "The issue before the bankruptcy court was whether the debtor was or the separate corporations were the employer or employers liable for the withholding tax." 607 F.2d at 1239. The focus was determining the "employer" in order to establish responsibility for withholding. The issue was not who should be considered the "employer" for purposes of calculating FICA and FUTA wage bases.

### d. *In re Laub Baking Co.*

In *In re Laub Baking Co.*, 642 F.2d 196 (6th Cir.1981), the Sixth Circuit Court of Appeals was called upon to make "a determination of whether a trustee in bankruptcy who makes priority wage payments to the bankrupt's employees for services rendered to the bankrupt prior to the bankruptcy is an 'employer' subject to F.I.C.A. and F.U.T.A. employer taxes." *Id.* at 198. The Court determined that the trustee was indeed liable for FICA and FUTA taxes owed by the employer.

> The Trustee here has already paid the withheld employee taxes that were in issue in Otte. Unlike those withheld employee taxes, the taxes in issue in the present case are not "carved out" of employee wages. Rather, sections 3111 and 3301 of the revenue code each impose an "excise tax" on employers with respect to having individuals in their employ. These taxes are taxes on the employer, not taxes on the employee that are withheld from the employee's wages and paid by the employer on behalf of the employee. The mere fact that computation of these employer taxes is based on the amount of wages that are paid to employees does not alter this fact.

642 F.2d at 199.

The issue in Laub was not the appropriate calculation of wage bases; it was the responsibility of the statutory employer to pay FICA and FUTA taxes. Interestingly, the court stated that computation of employer taxes is based on the "wages that are paid to employees." 642 F.2d at 199. This is the type of "wages paid" language plaintiffs rely on in support of their argument that they

should be considered the employers for purposes of determining the appropriate FICA and FUTA wage bases. The court, however, referred to the "*amount* of wages paid to employees" as the basis for computing taxes on the employer. 642 F.2d at 199 (emphasis added). There is no dispute, for purposes of the current cross-motions, about the amount of wages plaintiffs paid to the PWEs. The dispute is about how that amount is to be treated: in the aggregate, as plaintiffs argue, or according to work performed for the different Production Companies, as the government argues.

### e. *Winstead v. U.S.*

Similarly, in *Winstead v. United States*, 109 F.3d 989 (4th Cir.1997), the Fourth Circuit considered who should be regarded as the employer of day laborers who worked on the plaintiff's land—the sharecroppers for whom the day laborers worked, or the plaintiff, who paid the day laborers from his own accounts. 109 F.3d at 991. The court held that the plaintiff was considered the employer for purposes of determining responsibility for withholding, paying and reporting FICA and FUTA taxes. Although the question raised in Winstead was superficially similar to the question raised in this case, "the identity of the employer," the reason for asking the question was different. Therefore Winstead, too, does not support plaintiffs' contention that they should be regarded as the employer for purposes of computing the FICA and FUTA wage bases.

### f. *Consolidated Flooring I, II*

In *Consolidated Flooring Services v. United States*, 42 Fed.Cl. 878 (1999) ("*Consolidated Flooring II*"), Judge Margolis indulged the parties' request to "identify the scope of the term 'employment taxes' as used in the Court's August 21, 1997 opinion in [*Consolidated Flooring I*], reported at 38 Fed.Cl. 450 (1997)." 42 Fed.Cl. at 878. The Consolidated Flooring II court concluded that "the term 'employment taxes' as used in its August 21, 1997 opinion includes income taxes, the employee's portion of FICA, the employer's portion of FICA, and FUTA." Id. at 879. While plaintiffs correctly note that Consoli-

dated Flooring I identified the plaintiff as the statutory employer "liable for withholding and paying employment taxes on plaintiff's payments to the helpers," 38 Fed.Cl. at 460, nothing in either opinion goes to the narrower issue of the meaning of the term "employer" in determining how the FICA and FUTA wage bases are to be calculated.

### g. *United States v. Cleveland Indians Baseball*

Unlike *Otte* and the cases that followed, the Supreme Court in *Cleveland Indians* recently addressed an issue related to the calculation of FICA and FUTA wage bases. The Court held the calculation of wage bases are indeed based on wages paid by the employer. 532 U.S. at 209, 121 S.Ct. 1433. Specifically, the Court stated that the wages paid by the employer are "the touchstone for determining the applicable tax rate and wage base." *Id.*

The issue the Court addressed in *Cleveland Indians,* however, was different from the issue in the current case. The plaintiff disputed the amount of FICA and FUTA taxes due on wages paid to employees as a result of a settlement of a labor dispute. The wages were earned between 1986 and 1987, but were not actually paid until 1994. The question presented was whether "payments [from the plaintiff to employees], characterized as back wages, should be taxed by reference to the year they were actually paid (1994), as the Government urges, or by reference to the years they should have been paid (1986 and 1987), as the Company and its supporting amicus, the Major League Baseball Players Association, contend." *Cleveland Indians,* 532 U.S. at 203, 121 S.Ct. 1433. The Court held that "back wages are subject to FICA and FUTA taxes by reference to the year the wages are in fact paid." 532 U.S. at 204, 121 S.Ct. 1433. The Court did not discuss the issue of *who* was to be considered an employer, or how that determination was to be made. The Court dealt with the timing issue relating to the calculation of FICA and FUTA wage bases.

Plaintiffs emphasized at oral argument that the government relied on the "wages paid" language of FICA and FUTA in *Cleveland Indians,* but advocates against such an interpretation in this case. *See* Tr. at 41, 46, 56. Plaintiffs imply that the government has shifted course in this case in order to reap a larger tax payment. It is true that, unlike in *Cleveland Indians,* the government may be said in this case to argue against a "wages paid" interpretation of the Code provisions and Treasury Regulations governing the computation of FICA and FUTA wage bases. But it is not true that the government shifted course in its interpretation of the statutory language. In *Cleveland Indians,* the issue was the IRS's interpretation of statutory and regulatory language as it concerned back wages. The Supreme Court held that "the Internal Revenue Service has consistently interpreted [the statutes and regulations] to require taxation of back wages according to the year the wages are actually paid, regardless of when those wages were earned or should have been paid." *Cleveland Indians,* 532 U.S. at 220–21, 121 S.Ct. 1433.

The issue at bar is the identity of the employer for purposes of calculating FICA and FUTA wage bases. This Court's review of the applicable statutes, regulations, and revenue rulings demonstrates that the IRS has been consistent in its interpretation. Therefore, like the Court in Cleveland Indians, this Court "do[es] not resist according . . . deference in reviewing an agency's steady interpretation of its own [regulations and administrative rulings] implementing a[69]-year-old statute. 'Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.'" *Cleveland Indians,* 532 U.S. at 220, 121 S.Ct. 1433 (quoting *Cottage Savings,* 499 U.S. at 561, 111 S.Ct. 1503 (citing *Correll,* 389 U.S., at 305–06, 88 S.Ct. 445)).

### Conclusion

In light of the foregoing, the Court has concluded that the IRS has maintained a long-standing, uniform administrative practice of interpreting the relevant Code provisions in a manner that is not contrary to or inconsistent with those provisions or other governing law. The practice commenced

contemporaneously with the enactment of the relevant provisions in the Social Security Act of 1935. Congress has repeatedly reenacted the relevant Code provisions without substantial change, and has not revised the relevant provisions in the face of the IRS's longstanding, uniform administrative practice and interpretation. The Court accords substantial deference to the IRS's practice and interpretation. See *Cleveland Indians*, 532 U.S. at 220, 121 S.Ct. 1433; *Zenith*, 562 F.2d at 1219. In addition, for the reasons stated above, the Court is persuaded that the IRS's interpretation is correct as a matter of law.

Therefore, plaintiffs' motion for summary judgment is DENIED, and the government's motion for partial summary judgment is GRANTED.

The parties represented in their Joint Preliminary Status Report ("JPSR") that the consolidated cases would be fully disposed of if the Court granted plaintiffs' motion for summary judgment on the issue discussed in this Opinion and Order. The parties described that issue in their JPSR as "subsidiary issue 1." Proceedings with respect to all other issues were deferred pending resolution of subsidiary issue 1. The parties listed the remaining issues (numbered 2—7), as follows:

2) Whether the plaintiffs or the production companies for [which] the workers performed services were the common law employers of the workers.

3) Whether the computations of the FICA and FUTA taxes in issue erroneously included, in the calculation of wages, amounts that were paid under accountable plans, as defined by Treas. Reg. § 1.62–2(c), or amounts otherwise not includable in wages for purposes of the FICA and FUTA taxes in issue.

4) Whether plaintiffs, if liable for the additional assessments of FUTA taxes, are entitled to credits against those liabilities under [I.R.C.] § 3302.

5) If the amount of wages, for purposes of determining FICA and FUTA liabilities, is determined with respect to the common law employers of the workers, and if plaintiffs were not the common law employers, did the IRS, in computing taxable wages, misidentify some of the employers so as to treat, in some instances, a single employer of a worker as being two or more employers.

6) If plaintiffs are liable for some or all of the FICA and FUTA assessments in issue and failed to make required deposits and payments of tax, whether there was substantial authority for plaintiffs' positions, whether there was adequate disclosure of those positions, and whether the plaintiffs acted in good faith, so that plaintiffs should not be liable for the penalties assessed with respect to the FICA and FUTA liabilities in issue.

7) Whether the statute of limitations bars the assessment and collection of the FICA and FUTA taxes and additions thereto that are in issue.

JPSR at 3–4.

With subsidiary issue 1 now resolved in favor of the government, the Court ORDERS the parties to confer and submit to the Court by October 29, 2004, a joint status report proposing a schedule for further proceedings to resolve the remaining issues in these consolidated cases. If the parties are unable to agree on a joint status report, they shall submit separate status reports. The Court FURTHER ORDERS that the parties shall appear for a status conference at 10 a.m. on November 8, 2004, to consider a schedule for the conduct of further proceedings. The status conference will be held in open court at the National Courts Building, 717 Madison Place, NW, Washington, DC, 20005.

IT IS SO ORDERED.